## COMMONWEALTH *vs.* ELISHA W. DANA.

The law (Rev. Sts. *c.* 142,) authorizing magistrates to issue warrants to search for and seize lottery tickets, or materials for a lottery, unlawfully made, provided or procured, for the purpose of drawing a lottery, is not inconsistent with the 14th article of the declaration of rights.

The house or place where lottery tickets, &c. are believed to be concealed, is sufficiently designated and described in a search warrant, according to the provision of the Rev. Sts. *c.* 142, § 3, by denominating it the " office of D." and truly stating the number thereof and the street in which it is situate, although A. occupies the office with D.

If a search warrant and the complaint on which it is issued be on the same paper, and the things to be searched for be properly designated and described in the complaint, and the warrant direct the officer to search for the things " mentioned in the above complaint," the process is legal and sufficient, without any further designation or description of the things in the warrant itself.

Books kept in relation to the proceedings respecting a lottery are " materials for a lottery," within the meaning of the Rev. Sts. *c.* 142, and may be seized on a search warrant.

The admission in evidence, on the trial of the defendant, of articles seized on a search warrant and taken from him, is not a violation of the 12th article of the declaration of rights.

The prohibition, in the Rev. Sts. *c.* 132, of the sale, &c. of tickets in "any lottery not authorized by law," extends to all lotteries not authorized by a law having force in this Commonwealth.

On the trial of a defendant, on an indictment for unlawfully having in his possession lottery tickets, with intent to sell them, after it was proved that he had such tickets in his possession, the judge instructed the jury, that " if from the whole of the evidence, they were led to the belief that the defendant did sell and deal in lottery tickets, and had them in his possession for that purpose, as charged in the indictment, they would be authorized to find him guilty, unless he had succeeded on his part, as had become his duty, to explain the facts and circumstances consistently with his innocence of that unlawful intention." *Held,* that there was no legal exception to this instruction.

In an indictment on the Rev. Sts. *c.* 132, for having in possession lottery tickets with intent to sell or offer them for sale, it is not necessary to aver the intent of the defendant to sell or offer them for sale within this Commonwealth.

THIS was an indictment, containing six counts, on the second and fourth sections of *c.* 132 of the revised statutes. The first

Commonwealth v. Dana.

count alleged that the defendant, on the 4th of January, 1841, at Boston, unlawfully had in his possession, with intent to offer for sale, and to sell and aid and assist in selling, negotiating and disposing of five hundred certain lottery tickets, and five hundred shares, to wit, halves and quarter tickets and shares, &c. in a certain lottery called School Fund Lottery, for the benefit of public schools in the State of Rhode Island. In the second count the defendant was charged with unlawfully having in his possession, with intent to sell, a ticket in the lottery aforesaid, the purport and effect of which was set forth at large. The fourth count was like the second, except in the description of the ticket. The third count charged the defendant with having unlawfully incited and enticed, and having attempted to incite and entice sundry persons to the jurors unknown, to purchase and receive certain lottery tickets and certain shares, viz. halves and quarter tickets, in the lottery before mentioned. The fifth count alleged that the defendant did unlawfully advertise lottery tickets and shares in lottery tickets for sale, and did set up and exhibit representations of a lottery, and of the drawing thereof, indicating thereby where a lottery ticket or a share thereof, might be purchased and obtained. The sixth count was like the fourth, except that it set forth a share of a ticket instead of a whole ticket.

In each of these counts, it was averred that the tickets and shares of tickets, therein mentioned, were in a lottery " not authorized by law in said Commonwealth."

Upon the trial of the defendant, in the municipal court, the judge ruled that a certified copy of a search warrant, with the complaint on which it was founded, and which made part of the same, (as in the margin,*) might be read in evidence to the

---

* " The complaint and warrant, and the officer's return, were thus : " To the Justices of the Police Court within and for the city of Boston, Jonathan F. Pulsifer of the city of Boston, in the county of Suffolk, Trader, on oath informs the said Justices, that the following goods, to wit: he has reason to believe and does believe that lottery tickets and materials for a lottery unlawfully made, provided and procured for the purpose of drawing a lottery are concealed in the following places, to wit: Office of Elisha W. Dana, No. 2 Devonshire Street,

Commonwealth *v.* Dana.

iury, and it was read accordingly. To this ruling, the defendant excepted.

" The officer who served the warrant produced at the trial sundry articles by him taken under the writ, at the service of the same, and in the office of the defendant; some of which articles were the property of J. Phalen & Co. but containing lottery tickets in the School Fund Lottery of the State of Rhode Island, and all in the care and keeping of the defendant. The counsel for the defendant objected to the admission of these articles so taken by the officer and shown to the jury in court, on the ground that he had exceeded his authority under the search warrant, and moved that the same be excluded. But the judge refused to exclude any thing from the jury, which was done or taken by the officer in execution of the warrant. To which the defendant's counsel excepted.

rear of 23 State Street. [Seven other places and persons were also mentioned in this complaint] — and prays a Warrant to search there for the same.

" JONATHAN PULSIFER.

" Received and sworn to, before said court, this fourth day of January in the year of our Lord one thousand eight hundred and forty-one.

" THOMAS POWER, Clerk.

" Suffolk to wit : Commonwealth of Massachusetts. To the Sheriff of our County of Suffolk, his Deputies, and the Constables of our city of Boston, greeting. We command you and each of you, forthwith, with necessary and proper assistants, to enter, in the day time, into the places mentioned in the above information, and there search for the tickets and materials there named, and if the same, or any part thereof, shall be found on such search, that you bring the tickets and materials so found, together with the body of the person or persons in whose possession found, if they may be found in our said city, before said court, to be disposed of and dealt with as to law and justice shall appertain.

" You are also commanded, in like manner, to notify the informant to appear and give evidence touching the matter contained in the above complaint when and where you have the said goods and person, or either of them.

" Witness, WILLIAM SIMMONS, Esquire, at Boston, this fourth day of January, in the year of our Lord one thousand eight hundred and forty-one.

" THOMAS POWER, Clerk.

" Suffolk, ss. City of Boston, January 4, 1841. I have made diligent search in the within named shops, and found in the office of E. W. Dana, George E. Dana and Benjamin Eaton, a large lot of lottery tickets, books, &c., and I arrested the bodies of E. W. Dana, George E Dana and Benjamin Eaton, in whose possession I found said tickets, &c. and this 5th day of January I have of them before the court as directed.

JACOB C. TALLANT, Constable."

" To maintain the issue on his part, the counsel for the defendant offered to read in evidence the certified copy of an act of the State of Rhode Island, passed at the January session of their legislature in 1839, authorizing Philip Case, his executors, his heirs, administrators and assigns, to put forth a lottery for the benefit of public schools ; and offered further to prove, that said Case had duly assigned the grant, and all the benefit of said lottery, to Phalen & Co., who are the present owners and managers of the same ; and also that the tickets seized in the defendant's possession, and now in evidence against him, were genuine and valid tickets in said lottery, and duly issued under the authority of said act of the State of Rhode Island.   To this evidence the attorney for the Commonwealth objected, as not being competent evidence, and the court sustained the objection, and refused to permit the act to be read.   To which the defendant's counsel excepted.

" The defendant's counsel moved the court to instruct the jury, that lottery tickets, in a lottery which is authorized by a law of the State of Rhode Island, where the said School Fund in this Commonwealth, with intent to sell, was prohibited by the Lottery is established, were not tickets, the possession of which statute for a violation of which the defendant was on trial.   But the judge refused so to instruct the jury, and did instruct them, as matter of law, that the possession of a ticket, with intent to sell it, in any lottery which was not authorized by some law of this Commonwealth, or of the congress of the United States, for a national purpose, was prohibited by said statute, and that such construction was to be given to the phrase therein, in the first section of said 132d chapter of the revised statutes, "not authorized by law."   To which instruction the defendant's counsel excepted.

" On the subject of the intent with which the defendant had the tickets in his possession, the defendant's counsel moved the court to instruct the jury that they could not infer the defendant's intention to sell the tickets, from his possession thereof and of the other articles seized in his office and then before the jury, unless all the circumstances were such as to be

inconsistent with any other hypothesis as to his possession, than an intention to sell them : And further, that they could not infer a guilty intention of the defendant, unless all the circumstances were such as not only to conclude to his guilt, but to exclude his innocence. But the judge, having already instructed the jury on the point involved in this matter of law, refused to instruct the jury in the manner so requested, but said he should rest in the instruction, which he had already given to the jury, viz. that it belonged to the jury to weigh and consider all the facts and circumstances in evidence, and to infer the defendant's intention therefrom. If from the whole of the evidence on the part of the Commonwealth, they were led to the belief, that the defendant did sell and deal in lottery tickets, and had them in his possession for that purpose, as charged in the indictment, they would be authorized to find him guilty, unless he should have succeeded on his part, as had become his duty, to explain those facts and circumstances consistently with his innocence of that unlawful intention. To which, the defendant's counsel excepted."

The jury found the defendant guilty on the first five counts in the indictment, and not guilty on the sixth.

*J. H. Patten,* of New York, *Choate & English,* for the defendant.

*Austin,* (Attorney General,) for the Commonwealth.

WILDE, J. This was an indictment for the alleged violations of the 132d chapter of the revised statutes, prohibiting the sale of lottery tickets, or the possession of the same with intent to sell, or to offer them for sale, or the aiding and assisting in any such sale. The case comes before us on sundry exceptions to the rulings of the judge of the municipal court at the trial.

In support of the issue joined in the case, the attorney for the Commonwealth offered in evidence the copy of a search warrant issued from the police court, to the admission of which the defendant's counsel objected, on the ground that the same had been issued improvidently, and was void in law. The warrant was issued on the complaint of one Jonathan F. Pulsifer, under oath, in which he alleged that he had good reason to believe,

and did believe, that lottery tickets, and materials for a lottery, unlawfully made, for the purpose of drawing a lottery, were concealed in the office of the defendant, and sundry other places.

By the Rev. Sts. c. 142, § 2, any magistrate is authorized to 'ssue warrants " to search for and seize lottery tickets, or materials for a lottery, unlawfully made, provided or procured, for the purpose of drawing a lottery," when he shall be satisfied that there is reasonable cause, upon complaint made on oath, that the complainant believes that lottery tickets or materials for a lottery are concealed in any particular house or place.

If this be a valid law, the objection of the defendant's counsel fails ; but they contend that it is void, being contrary to civil liberty, natural justice, and the bill of rights, the 14th article of which declares, that " every subject has a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions ; all warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation."

The question is, whether the search for and the seizure of the defendant's papers and property, directed by the warrant in this case, were an unreasonable search and seizure.  The defendant's counsel maintain that such searches and seizures are utterly inconsistent with the plainest principles of the common law, and the natural rights of mankind.   That the right to search for and seize private papers is unknown to the common law is most conclusively shown by the able opinion of Lord Camden, in the case of *Entick* v. *Carrington*, 19 Howell's State Trials, 1029 S. C. 2 Wils. 275.   (See also *Huckle* v. *Money*, 2 Wils. 206, 207.)   Such a right or power had for a long time before been exercised and maintained, during the arbitrary reigns of the Stuarts and afterwards.   The power assumed was to search any man's house, to break open every room, desk or trunk, if ne cessary, and to seize and carry away all his books and papers of every description, and this on mere suspicion, without probable cause, and without any previous accusation against him. Under this was the power claimed by the secretary of state, Lord Halifax, in the case of *Entick* v. *Carrington*, which was

decided by the whole court to be manifestly illegal, and "unsupported by one single citation from any law book extant." "Papers," says Lord Camden, "are the owner's goods and chattels ; they are his dearest property ; and are so far from enduring a seizure, that they will hardly bear an inspection ; and though the eye cannot, by the law of England, be guilty of a trespass, yet where private papers are removed and carried away, the secret nature of those goods will be an aggravation of the trespass, and demand more considerable damages in that respect. Where is the written law that gives any magistrate such a power ? I can safely answer there is none ; and therefore it is too much for us without such authority to pronounce a practice legal, which would be subversive of all the comforts of society." It was urged by counsel in that case, that though the practice could not be maintained by any direct law, yet it bore a resemblance to the known case of search for and seizure of stolen goods. Lord Camden says, that this case of searching for stolen goods, crept into the law by imperceptible practice, and that Lord Coke denied its legality. "Observe, too," he says, "the caution with which the law proceeds in this singular case. There must be a full charge, upon oath, of a theft committed. The owner must swear that the goods are lodged in such a place. He must attend at the execution of the warrant, to show them to the officer, who must see that they answer the description." "If it should be said," he adds, "that the same law, which has with so much circumspection guarded the case of stolen goods from mischief, would likewise in the other case protect the subject by adding proper checks, &c., my answer is, that precautions would have been long since established by law, if the power itself had been legal ; and that the want of them is an undeniable argument against the legality of the thing."

These citations from the opinion of Lord Camden show, to some extent the grounds and principles upon which the important decision in *Entick* v. *Carrington* was founded. And they show clearly that that decision and those principles have but little bearing on the present case. The framers of our constitu-

tion were not ignorant of those principles. They were well known, and warmly cherished by those enlightened statesmen, as important and necessary for the security of civil liberty. They had been discussed, and powerfully and eloquently maintained, in the discussions had respecting writs of assistance, several years before the decision in *Entick* v. *Carrington*.

With the fresh recollection of those stirring discussions, and of the revolution which followed them, the article in the Bill of Rights, respecting searches and seizures, was framed and adopted. This article does not prohibit all searches and seizures of a man's person, his papers, and possessions ; but such only as are "unreasonable," and the foundation of which is "not previously supported by oath or affirmation." The legislature were not deprived of the power to authorize search warrants for probable causes, supported by oath or affirmation, and for the punishment or suppression of any violation of law. The law, therefore, authorizing search warrants in certain cases, is in no respect inconsistent with the declaration of rights.

We are also of the opinion, that the warrant in this case is in conformity with all the requisitions of the statute and the declaration of rights. The complaint is under oath, and alleges a probable cause to authorize the search and seizure. The articles seized are described, and the place in which they were concealed is designated, with sufficient certainty. There could be no difficulty in ascertaining, by inspection, the articles which the officer was directed to seize. The place of concealment is alleged to be the office of the defendant, No. 2 Devonshire Street, rear of 23 State Street. The defendant occupied that office, and the fact that another person occupied it with him cannot be considered as constituting a material variance.

It has been objected that the articles seized are not described, nor is the place of concealment designated in the warrant, but only in the complaint. But considering that the complaint and the warrant are on the same paper, that there is a reference in the warrant to the complaint, for the description of the articles to be seized, and that this form of proceeding has been uniform for more than fifty years, in search warrants for stolen goods ; we cannot think that this formal objection has any foundation.

It has been objected further, that the warrant was illegally served, because the officer seized " books, &c.," and it is argued that books are not " materials for a lottery." But we think that books, kept in relation to the proceedings respecting a lottery, are to be considered as materials for a lottery ; and it does not appear that any other books were seized.

Again, it has been urged, that the seizure of the lottery tickets and materials for a lottery, for the purpose of using them as evidence against the defendant, is virtually compelling him to furnish evidence against himself, in violation of another article in the declaration of rights. But the right of search and seizure does not depend on the question whether the papers or property seized were intended to be used in evidence against the offender or not. The possession of lottery tickets with the intent to sell them was a violation of law. The defendant's possession, therefore, was unlawful, and the tickets were liable to seizure as belonging to the *corpus delicti*, or for the purpose of preventing any further violations of law.

In cases of the seizure of stolen goods on search warrants, the goods have almost in all cases been given in evidence against the offender, and no one I apprehend ever supposed that a seizure for that purpose was a violation of the declaration of rights ; and in this respect there is no distinction between the seizure of stolen goods and the seizure of lottery tickets.

There is another conclusive answer to all these objections. Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done ; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully ; nor would they form a collateral issue to determine that question. This point was decided in the cases of *Legatt* v. *Tollervey*, 14 East, 302, and

*Jordan* v. *Lewis*, 14 East, 306, *note* ; and we are entirely satis-
fied that the principle on which these cases were decided is
sound and well established.   On either of these grounds, there-
fore, we are of the opinion that the evidence on the part of
the Commonwealth was rightfully admitted.

In the defence, a copy of an act of the State of Rhode
Island was offered in evidence, by which it appeared, that the
tickets seized in the defendant's possession were duly issued
under the authority of that State.   This evidence was rejected
as immaterial, and we think it was rightly rejected for that
reason.   The laws of Rhode Island, or any other State, have
no force in this Commonwealth.   It is true the court, on the
principle of comity, will take notice of the laws of another
State, and will enforce contracts made there, or in reference to
such laws.   But the principle of comity has no application to
the present case.   The defendant is charged with an offence
committed in this Commonwealth, in violation of the Rev. Sts.
*c.* 132, §§ 1, 2.   And according to the construction we give to
that statute, it would be no defence to prove that the tickets
found in the defendant's possession, with the intent charged in
the indictment, were duly issued by the authority of the State
of Rhode Island.

By the first section, " Every person who shall set up or pro-
mote any lottery, not authorized by law, for money," &c., is
made liable to be punished by a fine not exceeding $ 2000
And by the second section, " Every person who shall. sell, or
shall offer for sale, or shall. have in his possession with intent
to sell or to offer for sale a ticket, in any such lottery, or a share
of ticket," shall be liable to be punished by a like fine.

The question depends on the meaning of the words " not au
thorized by law ; " in respect to which we cannot entertain a
doubt.   By the word " law," as we think, the legislature in-
tended to refer to the municipal law of this Commonwealth ; the
law of the land ; or, in other words, any law having force in this
Commonwealth, either by a statute of its legislature, or by a law
of the United States.   To suppose that the legislature intended
to allow the sale of tickets in a lottery authorized by another

State, is such an impeachment of the discernment and foresight of the legislature, as cannot be admitted. Such a supposition is inconsistent with the manifest design of the statute, which was to suppress lotteries not authorized by law, and to prevent the sale of any tickets in such lotteries, and thus to put a stop, as far as might be, to the many evils resulting from that species of gambling.

It has been argued by the defendant's counsel, that the legislature did not intend to prohibit the sale of tickets in lotteries authorized by the law of another State, because, by a former statute, the sale of all tickets not authorized " by the laws of this Commonwealth " was prohibited ; whereas in the revised statutes a different phraseology is adopted, and the words " of this Commonwealth " are omitted. And the rule of construction laid down in *Ellis* v. *Paige*, 1 Pick. 45, is relied on ; which is, " that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled." This rule has no bearing upon the question in controversy. There is no necessity for reviving by construction the words omitted ; for the omission does not change the meaning. The words are superfluous, and no certain inference can be drawn from the omission of them in the revised statutes. One of the objects of the revision of our laws was to condense them by change of phraseology, and the rejection of all superfluous words, which has been frequently done, where there is evidently no change of meaning by the change of language or the omission of the superfluous parts of the former statutes. We think, therefore, that the statute under consideration is to be construed in the same manner as it would be if there had been no previous statute on the same subject.*

The only remaining exception is to the instruction of the court to the jury. The defendant's counsel except to the instruction as to the evidence of the defendant's intent to sell the tickets found in his possession. The court was requested to instruct the jury that they could not infer a guilty intention on

* S. P. *The People* v. *Sturdevant*, 23 Wend. 418.

the part of the defendant, unless all the circumstances were such as to be inconsistent with any other hypothesis than an intention to sell the tickets. Such an instruction would be clearly wrong ; for the most extravagant and unreasonable hypothesis may be imagined, to account for any facts on false grounds.

The true rule is, that a defendant is not to be convicted by circumstantial evidence, if all the facts proved can be reasonably accounted for, without inferring the defendant's guilt. And substantially, though not in terms, the jury were so instructed They were instructed that "if, from the whole of the evidence on the part of the Commonwealth, they were led to the belief that the defendant did sell and deal in lottery tickets, and had them in his possession for that purpose, as charged in the indictment, they would be authorized to find him guilty ; unless he had succeeded on his part, as it had become his duty, to explain those facts and circumstances, consistently with his innocence of that unlawful intention."

To this charge to the jury, if rightly understood, we think there is no legal exception. It has been objected, that by the charge the burden of proof was thrown on the defendant to prove his innocence. But we think this is not the meaning of the charge ; for the jury were instructed, that they were not authorized to find the defendant guilty, unless the evidence was such as to lead them to believe that he was guilty. The remark that it was the duty of the defendant to explain those facts and circumstances proved against him, consistently with his innocence, meant no more than he ought so to do. But still if he failed, they were not to find a verdict against him, unless on the who'e evidence they believed him guilty. If they doubted, they were to acquit him. So the case was left to the jury on the right footing, namely, that the burden of proof was not shifted, but still remained on the Commonwealth to prove the guilt of the defendant, and if a reasonable doubt remained, the defendant was to be acquitted.

*Exceptions overruled.*

After the exceptions were overruled, the defendant filed a motion in arrest of judgment. The main ground of the motion

was, that the indictment did not allege the defendant's intent to sell, &c. the tickets within this Commonwealth. This motion was argued by *English*, for the defendant, and by *Austin*, (Attorney General,) for the Commonwealth.

SHAW, C. J.    When it is the intent of a party convicted to move in arrest of judgment, in a case brought before this court by exceptions, after a conviction below, on the ground that the indictment is fatally defective, ·so that no valid judgment can be rendered upon it, it is very convenient that such a motion should be filed before the argument on the exceptions. It may often occur, that the defect in the indictment will render the conviction, and of course the exceptions, immaterial; and sometimes the question on the exceptions, and that on the motion in arrest, will bear such a relation to each other, that it is most convenient to hear them together, and to consider both, before a decision is made on either. But as there is no established rule on the subject, we cannot say that the present motion comes too late. See *Commonwealth* v. *Peck*, 1 Met. 428.

The objection to the first and several other counts in the indictment is, that although it alleges, that the defendant at Boston, &c. unlawfully had lottery tickets in his possession, with an intent to sell the same, it does not allege an intent to sell the same within this Commonwealth; and the question is, whether such an averment is necessary.

It is obvious, as this indictment follows the words of the statute, that the offence, intended to be charged in the indictment, is the same offence which is punishable by the statute. We are aware that it is not always sufficient to charge an offence in the words of a statute; because a statute must often use general terms and comprehensive descriptions; whereas an indictment requires certainty in charging the offence so specifically as to give the party notice of what he is to meet, and enable him to traverse the facts averred. But when the statute itself is sufficiently specific, a charge of the offence in the words of the statute is sufficient, in point of certainty. Here the indictment charges an unlawful possession of the lottery tickets, with the averment of an intent to sell generally, including of course, as

well this Commonwealth, as all other places.    It is, in this re-
spect, general and unlimited.

Where the possession of an article is made punishable be-
cause so held with a guilty intent, if the act intended is *malum
in se*, it is no answer to the charge, that it was intended thus to
ue committed out of the Commonwealth ; it is within the words
of the statute and the mischief intended to be prevented.    *Com-
monwealth* v.  *Cone*, 2 Mass. 132.

Perhaps a different rule should prevail, where the act intended
to be done is not criminal in itself, but only made so by statute.
If therefore it should appear in the trial of an indictment founded
on this statute, that lottery tickets were in the possession of a
person passing through this State, and held only for the purpose
of carrying them into another State for sale, it is very questiona-
ble whether such proof would support the indictment.    It cer-
tainly would not, if the construction, which the defendant puts
upon the statute, is the true one.    He maintains, that by a rea-
sonable construction, the statute intends to punish the mere pos-
session of lottery tickets, when there is an intent to sell them "in
this Commonwealth," though not so expressed.    If this is cor-
rect, then the same construction must be put upon the same
words in the indictment ; and it would be the duty of a judge,
on the trial of such indictment, to instruct a jury, that if such an
intent were not proved to their satisfaction, they must acquit the
defendant.    It appears to the court, therefore, that the question
is rather, whether the evidence is sufficient to maintain the in-
dictment, than whether the indictment is sufficiently certain.    If
the case were as above supposed, that the only intent proved
was an intent to carry the tickets into another State and sell them
there, the course would be, to request the court to instruct the
jury that such proof was not sufficient to support the indictment ·
and should the court decline giving such instruction, or instruct
them otherwise, then to take the exception.    But here no ques-
tion is made of the sufficiency of the evidence to support the
finding of an intent to sell in this Commonwealth.    The ques-
tion is, whether it was necessary to aver it in the indictment.
Had the statute expressed such qualification of the possession

— that is, with an intent to sell within the Commonwealth — it must have been so averred in the indictment, because it would have been a necessary ingredient in the description of the offence. As it is not so expressed in the statute, this rule does not apply ; and the court are of opinion that the intent to sell generally, being averred in the indictment, in the words of the statute, it is sufficient, although it should be held, on trial, that proof of an intent to sell in another State only would not bring the case within the statute so as to warrant a conviction.

There being several counts in the indictment, to which there is no other exception than the above, it becomes unnecessary to consider the other alleged causes for arresting the judgment.

*Motion in arrest of judgment overruled.*