## Commonwealth v. Burkert et al.

*Leon Schwartz*, district attorney and *Mitchell Jenkins*, assistant district attorney, for Commonwealth.

*Max Rosenn*, for defendants.

PINOLA, J., March 31, 1951.—Defendants, who are charged with conspiring to conduct and carry on a lottery, have moved to quash the indictment because: (1) The list of jurors for the year 1950 was not properly filed, and (2) the indictment is defective since it fails to set forth that the lottery was to be conducted in Luzerne County.

The indictment charges that they "at the County aforesaid and within the jurisdiction of this court, did conspire together to do a certain unlawful act, to wit: to manage, conduct and carry on a lottery. . . ."

By stipulation, counsel have agreed that Harold Rosenn, Esq., if called, would testify that during the latter part of January 1950 he made a search of the

prothonotary's office to locate the jury list for the year 1950 and was unable to find it. Eventually it was located in a safe in the prothonotary's office. There is no averment that counsel did not actually see the list, nor is there any averment that any person who served on the grand jury which found the indictment was not properly listed among the qualified jurors.

It is urged that failure to make the list readily available violated the Act of March 18, 1874, P. L. 46, sec. 3, 17 PS §985, which requires that:

"A list containing the name, occupation and residence of every person placed in the jury wheel, shall be kept certified by the judge and jury commissioners, or such of them as shall be present at the selection of such persons, and filed of record in the office of the prothonotary of the court of common pleas of the respective county."

The indictment in this case was found on January 11, 1950. This motion was not made until February 2, 1951. The delay is unreasonable and unwarranted. This motion should have been made at the first opportunity after indictment: Commonwealth v. Magid and Dickstein, 91 Pa. Superior Ct. 513.

In Commonwealth v. Borso, 59 D. & C. 587, cited by defendants' counsel, the validity of the indictment on a similar ground was questioned the very day following the return. Under the circumstances, we could, without more, overrule the objection on this score.

However, we point out that the selection of jurors in Luzerne County is not governed by the Act of March 18, 1874, supra, but by the Act of May 17, 1939, P. L. 157, 17 PS §1332, et seq.

Section 3 of this act provides, inter alia:

"One copy of this (jury) list shall be filed in the office of the prothonotary and shall be open to inspection by order of the court, and the other copy shall be delivered

to the president judge of the court of common pleas and be open to inspection by any judge of said court."

Since, according to the stipulation, Mr. Rosenn actually saw the list filed with President Judge Valentine, it cannot be said that there was any violation of this act.

Under section 9 (17 P S §1340) :

"Any objection or challenge to jurors based on their disqualification for jury service under this act, or to the array based on any irregularity in the proceedings or procedure in and by which said jurors were selected, drawn, or summoned for jury service, must be made before said jurors or array of jurors are sworn and cannot be made thereafter. After jurors are sworn without objection all objections to their qualifications as prescribed by this act or to the manner of their selection, drawing, or summoning shall be deemed to have been waived. No indictment can be attacked or verdict challenged by reason of any juror's disqualification under this act, or any irregularity in the manner of selecting, drawing, or summoning jurors unless due objection is made before said alleged disqualified, or illegally selected jurors are sworn."

So, we must overrule the first reason assigned.

We find no merit in the second reason, namely, that an indictment should aver the location of the object of the conspiracy, to wit, the lottery.

"The elements of conspiracy to do an unlawful act are a combination of two or more persons, with criminal intent or corrupt motive, to do a criminal or unlawful act, or an act not in itself unlawful, by criminal or unlawful means . . . the offense is complete . . . the moment the combination is formed. The overt acts are no part of the crime charged; they are merely the evidence of it; the means by which the Commonwealth is enabled to prove the conspiracy it-

self": Commonwealth v. Gaines, 167 Pa. Superior Ct. 485.

In State v. Pooler et al., 141 Me. 274, 43 A. (2d) 353, the same argument was advanced as now made before us. The court declared (p. 283):

"Although it has been noted that in most, if not all, jurisdictions lotteries are now prohibited by statute, yet the ingenuity of counsel suggests that, as our Court does not take judicial notice of the statutory law of other states, it cannot be assumed that the respondents did not intend to maintain a lottery in some state where it might be lawful. If there be such a state, then, say counsel for the respondents, the indictments have not negatived an intent to carry on a legal project in that particular jurisdiction.

"As the conspiracy is alleged to have been committed in this state, and is made by statute a criminal offense therein, it would appear that no refinement of pleading should make it necessary to negative a purpose to commit overt acts in some other jurisdiction where the offense was not prohibited."

The court referred to Commonwealth v. Dana, 2 Metc. 329, 43 Mass. 329, which concerned an indictment for unlawful possession of lottery tickets with intent to sell them. Objection was made that there was no allegation of intent to sell in that Commonwealth.

Shaw, C. J., declared (p. 341): " 'Here the indictment charges an unlawful possession of the lottery tickets, with the averment of an intent to sell generally, including of course, as well this Commonwealth, as all other places. It is, in this respect, general and unlimited.' "

He then pointed out that if the act intended to be done is not criminal in itself, but only made so by statute, and it should appear that the overt acts were to be carried out in a State where lawful, it would be-

come a question of whether the proof supported the indictment. He added (p. 342):

" 'It appears to the court, therefore, that the question is rather, whether the evidence is sufficient to maintain the indictment, than whether the indictment is sufficiently certain . . . the intent to sell generally, being averred in the indictment, in the words of the statute, it is sufficient, although it should be held, on trial, that proof of an intent to sell in another State only would not bring the case within the statute so as to warrant a conviction.' "

In Thompson et al. v. State, 106 Ala. 67, 17 So. 512, the court said (p. 79):

". . . the combination and agreement are of the essence, the gist of the offense; and as a distinct substantive offense it is then committed. The place at which it is intended to commit the felony is not material; it is the law of the place where the conspiracy is formed which is broken."

And in Vane v. United States, 254 Fed. (C. C. A.) 28, where the indictment was for conspiracy to rob a person named of certain mail matter, the court held it is not necessary to set forth the place of performance of the object of conspiracy. It said (p. 29):

"The indictment being for conspiracy to commit an offense, it is to be kept in mind that the gist of the crime is the conspiracy, and therefore, as was held by the Supreme Court in Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, a 'certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy.' . . . the point that there is no allegation of the place of performance of the purpose of the conspiracy must also fail, for the reason that, if the criminal agreement was formed about the time and within the jurisdiction as alleged, and had for its object the robbing of the

mails in the custody of De Witz, it was not at all necessary to set out or prove the place where the robbery was to be executed. It might be that a conspiracy would be formed in a jurisdiction of one of our courts, with the definite purpose of being executed in a foreign land, yet the conspirators could be indicted and tried in the jurisdiction where the unlawful combination was formed."

Following these decisions, we overrule the second objection. Accordingly, we enter the following

### Order

Now, March 31, 1951, the motion to quash this indictment is denied.