## Smith v. The State.

[No. 20,639.    Filed June 22, 1905.]

1. JURY.—*Homicide.—Death Sentence.—Conscientious Scruples.—Examination of Jurors.*—The prosecuting attorney has the right to ask a proposed juror on his *voir dire* whether he would as readily inflict a death sentence as life imprisonment in case defendant should be found guilty of murder in the first degree. p. 181.

2. EVIDENCE.—*Revolver Purchased by Colored Man.—Admissibility.*—Where the evidence showed that defendant, a colored man, had killed his wife with a revolver, evidence by a merchant, that she sold such revolver to a colored man, although she could not identify defendant as the person, is admissible. p. 182.

3. SAME.—*Criminal Intent.—Cross-Examination of Defendant.—Discretion of Trial Court.*—Where defendant is examined in chief as to his intent in the commission of an act, the prosecuting attorney may go into any phase of such intent on cross-examination, the extent thereof being largely in the discretion of the trial court, which discretion can not be interfered with except for the abuse thereof. p. 183.

4. SAME.—*Witnesses.—Feelings.—Cross-Examination.*—Where a witness testified in chief that she and the deceased were good friends, it was harmless error to refuse to permit defendant on cross-examination to ask her "if she was not a friend to the deceased." p. 183.

5. CRIMINAL LAW.—*Argument to the Jury.*—*Misconduct of Coun-*
*sel.*—Where defendant, a colored man, was on trial for the mur-
der of his wife, and the prosecuting attorney in his argument
to the jury said: "In this case, gentlemen of the jury, there
is no race question or race prejudice to be considered by the
jury. The fact that this man is a colored man should not be
taken into consideration by the jury. White men have been
hung for less atrocious crimes than this," defendant is not en-
entitled to have the submission of the cause or the verdict set
aside, the court having withdrawn such remarks from the jury
and instructed them to "make up their verdict from the evidence
and the law in the case." p. 184.

From Criminal Court of Marion County (34,632);
*Fremont Alford,* Judge.

Prosecution by the State of Indiana against Berkley
Smith for murder. From a judgment of conviction, de-
fendant appeals. *Affirmed.*

*John E. Spaan* and *Charles J. McGroarty,* for appellant.
*Charles W. Miller,* Attorney-General, *C. C. Hadley, L.*
*G. Rothschild* and *W. C. Geake,* for the State.

MONKS, C. J.—Appellant was convicted of murder in
the first degree, and his punishment fixed at death.

In the examination of the jurors on their *voir dire,* the
court, over appellant's objection, permitted substantially
the same questions to be asked by the prosecuting
1. attorney and answered by the jurors as those which
were held proper in *Coppenhaver* v. *State* (1903),
160 Ind. 540, 546, 547. Upon the authority of that case,
we hold the court properly overruled appellant's objections
to said questions.

It appears from the evidence that appellant and the de-
ceased, his wife, were living apart at the time of the kill-
ing, December 18, 1904. On the morning of that day—
Sunday—he purchased a revolver at a second-hand store
on Indiana avenue, and went to the home of Mrs. Jackson,
a next-door neighbor of his wife. Appellant went back to
Mrs. Jackson's in the afternoon, and while there his wife

came in. After a brief conversation, in which his wife refused to live with him, he, by means of said revolver, inflicted five gunshot wounds upon her person, and struck her on the head with said revolver several times. He then left the house and went up street a short distance, and was arrested by a police officer. When asked if he was the person who did the shooting, he said: "Yes, I shot my wife down there, and don't know whether I killed her or not." When asked why he killed her, he said: "I went to see her and wanted her to live with me, and she said she wouldn't do it; that she was going to drink beer and have a good time; and I couldn't stand for that, and I thought I would rather see her dead than to live without her."

The revolver with which the shooting was done was exhibited to Ray Davis, a witness called by the State, and she testified that she sold the revolver to a colored man 2. at her father's store on Indiana avenue on Sunday morning about a week before Christmas; that she did not "know who the colored man was who purchased the revolver, and did not know whether it was appellant." Counsel for appellant then moved that the court strike out all the evidence of said witness, because "she has not identified the defendant as the person who bought the revolver." This motion the court properly overruled. Appellant is a colored man. Evidence that the revolver used by the appellant in killing his wife was purchased by a colored man on Sunday about a week before Christmas, was material to the issues involved in said cause. Whenever evidence tends to prove a fact in issue, however slight that evidence may be, it is admissible. A party can not be required to prove a fact by a single item of evidence or by one witness, but he may "proceed step by step, offering link by link." *Deal* v. *State* (1895), 140 Ind. 354, 373; 1 Wharton, Evidence (3d ed.), §21; Wharton, Crim. Ev. (9th ed.), §27. The testimony of other witnesses identified appellant as the colored man who bought the revolver from said

witness, and that the same was purchased on the morning of the day he killed his wife.

The prosecuting attorney asked appellant on cross-examination, "if at the time you had a conversation with Mr. and Mrs. Harvey about a similar thing that happened in Kentucky, when a man killed his wife, and cheated the gallows by committing suicide, you did not have in mind the killing of your wife?" Counsel for appellant objected to the "first part of the question as assuming something that does not throw any light upon the facts of this case," which objection the court overruled. Appellant testified that he had no such conversation or intention. Appellant had testified in chief that "up to the time of the killing he had no intention of killing his wife," and that he "did not buy the revolver for that purpose." The general subject of the examination in chief involved the question of appellant's intent, if any, to kill his wife, and on cross-examination the prosecuting attorney had the right to go into any phase of that subject, whether he had such intent, and when it was formed. The cross-examination of witnesses, and the extent to which it may be carried, necessarily rests in the discretion of the trial court, and this court can not interfere unless a clear abuse of such discretion is shown. 2 Elliott, Evidence, §§905, 909; *Shields* v. *State* (1897), 149 Ind. 395, 402, and cases cited. While the form of the question may be objectionable, the same was not of such a character as to affect the substantial rights of appellant.

Appellant complains because the court refused to permit him to ask Mrs. Jackson, a witness for the State, on cross-examination, as affecting her credibility, "if she was not a friend to the deceased." Said witness testified during her examination that she and the deceased were good friends. This rendered harmless the error, if any, in refusing to permit the witness to answer said question.

Another question propounded to this witness on cross-examination was excluded, but it is clear, under the rule stated as to the discretion of the court in such matters, that there was no such abuse thereof as will justify a reversal.

In his argument to the jury the prosecuting attorney said: "In this case, gentlemen of the jury, there is no race question or race prejudice to be considered by the jury.

5.     The fact that this man is a colored man should not be taken into consideration by the jury.     White men have been hung for less atrocious crimes than this." To which statement appellant objected, and the court sustained said objection, and instructed the jury not to consider such statement in making up their verdict, but to "make up their verdict from the evidence and the law in the case." After said instruction was given, appellant moved that the court "withdraw the submission of said cause," which motion the court overruled.     It is not every violation of the rule governing the discussion of causes before a jury that will entitle the defendant in a criminal case to have the verdict set aside.     *Morrison* v. *State* (1881), 76 Ind. 335; *Combs* v. *State* (1881), 75 Ind. 215; *Livingston* v. *State* (1895), 141 Ind. 131, 133.

As was said by this court in *Morrison* v. *State, supra*: "If, for every transgression of the prosecuting attorney beyond the bounds of logical or strictly legal argument, the defendant could claim a new trial, few verdicts could stand, and the administration of criminal justice would become impracticable."

It was said in *Combs* v. *State, supra*: "If every immaterial assertion or statement which creeps into an argument were to be held ground for reversal, courts would be so much occupied in criticising the addresses of advocates as to have little time for anything else.     Common fairness requires that courts should ascribe to jurors ordinary intelligence, and not disregard their verdicts because counsel, during the

argument, may have made some general statements not supported by the evidence."

In the case of *Pigg* v. *State* (1896), 145 Ind. 560, 564, the court says: "The alleged misconduct of the assistant prosecuting attorney, of which complaint is made, occurred in his opening statement to the jury, in which he said: 'The reason why murders are so frequent in Sullivan county is because life is held so cheap.' The appellant objected to this language, and moved that the court set aside the submission of the cause and discharge the jury from its further consideration. The court sustained the objection to the remark, but overruled the motion to set aside the submission of the cause. The court also instructed the jury as to the objectionable language as follows: 'Gentlemen of the jury, counsel have no right to refer to anything outside of this case, and you must not consider anything except such things as have reference to the case on trial, and counsel must not go outside the records in this case any more.' We do not believe the appellant was materially prejudiced by the alleged improper language, the objection to which was thus sustained, and which was condemned by the court in the instruction given to the jury. Nor do we think the impropriety of the language was so gross that its evil effects, if any, might not thus be corrected."

If the prosecuting attorney was guilty of misconduct in said statement to the jury, as claimed by appellant, the instruction of the court directing the jury to disregard it and determine the case upon the evidence and the law was sufficient to cure the same. Gillett, Crim. Law (2d ed.), §901; *Norton* v. *State* (1886), 106 Ind. 163, 169; *Blume* v. *State* (1900), 154 Ind. 343, 354-357, and cases cited; *Epps* v. *State* (1885), 102 Ind. 539, 550-552; *Carter* v. *Carter* (1885), 101 Ind. 450; *Anderson* v. *State* (1886), 104 Ind. 467, 475; *Shular* v. *State* (1886), 105 Ind. 289, 302, 55 Am. Rep. 211; *Boyle* v. *State* (1886), 105 Ind. 469, 480, 481, 55 Am. Rep. 218; *Warner* v. *State* (1886),

114 Ind. 137, 140, 141; *Proctor* v. *DeCamp* (1882), 83 Ind. 559, 561.

It is next insisted that "the verdict is contrary to the evidence, because there is no evidence of premeditation." After a careful examination of the evidence, we are satisfied that the verdict of murder in the first degree was not contrary to the evidence.

Judgment affirmed.