## WELTY v. STATE OF INDIANA.

[No. 22,023. Filed December 18, 1912. Rehearing denied November 19, 1913.]

1. HOMICIDE.—*Evidence.—Self-defense.—Intent to Kill.*—Evidence tending to show that decedent was of quarrelsome disposition, that defendant, though a peace officer, was always armed and had many brawls, that they had had several difficulties in a business way, that decedent and another called at defendant's office to have a contract prepared, that being dissatisfied decedent arose to leave the room, whereupon defendant grabbed him roughly and demanded pay for the work done, that decedent broke away twice and started to descend the stairway, when defendant shoved or kicked him and he struck defendant two or three times on the arm with a small stick which he had picked up in the hallway, that decedent proceeded down stairs and called

to the other man, asking him to go elsewhere to have the work prepared, that defendant, cursing and threatening to kill decedent, followed and struck decedent, who threw up his hand to ward off the blow, dropped the stick, and started to run, that while decedent was receding, defendant, continued to follow him, fired at him twice and then, taking deliberate aim, fired a third shot which killed decedent, that all the shots entered decedent's back, that decedent was not armed in any way, together with the uncorroborated statement of defendant that decedent had called him a vile name, and that he was in a state of anger and fear, presents no question of self-defense, but discloses an intention to kill.   p. 416.

2.   CRIMINAL LAW.—*Presumptions.—Operation and Effect.*—A presumption, like a fact proved, remains available to a party in whose favor it arises, until overcome by opposing evidence. p. 422.

3.   CRIMINAL LAW.—*Presumptions.—Malice.*—Malice may be inferred or presumed from the character of the act, the manner and circumstances of its execution, and from the character of the weapon used.   p. 422.

4.   CRIMINAL LAW.—*Evidence.—Presumptions.—Burden of Proof.*—The burden of proof is not affected by the creation or presence of a presumption of law from an undisputed or proved fact.   p. 423.

5.   CRIMINAL LAW.—*Evidence.—Presumptions.*—Presumptions of law are usually grounded upon public policy, social convenience or safety, and are either such as are expressly declared by statute, or such as the courts generally have recognized and sanctioned in the administration of justice.   p. 423.

6.   HOMICIDE.—*Evidence.—Presumptions.—Malice.*—While the law presumes malice from a killing which is unexplained, as well as from an intentional killing, such presumption gives way to the presumption of innocence, where the facts are disclosed, and leaves the question of malice for the jury's determination.   p. 423.

7.   CRIMINAL LAW.—*Trial.—Burden of Proof.*—The burden of proof never shifts either in a civil or criminal case.   p. 425.

8.   CRIMINAL LAW.—*Presumptions.—Operation and Effect.*—A presumption of law is in effect an administrative assumption or determination for procedural purposes, which makes only a *prima facie* case, and gives way before evidence which raises a doubt, or explains the act.   p. 426.

9.   CRIMINAL LAW.—*Instructions.—Construction as a Whole.*—An instruction cannot be dissected and its parts disassociated from each other, or from other instructions, but should be considered as a whole.   p. 427.

10. HOMICIDE.—*Evidence.—Presumptions.—Malice.*—The law implies malice from an unexplained homicide with a deadly weapon upon provocation by words only; but when this implication is rendered valueless by the evidence, the burden still remains upon the State to prove malice if it insists upon a conviction for murder. p. 428.

11. HOMICIDE.—*Instructions.—Malice.*—An instruction, informing the jury that the use of a deadly weapon under a provocation by words only is evidence of malice, is not open to the objection that it changes the burden of proof, or that it points out a particular fact and advises the jury that it may disregard all other evidence tending to negative malice, and it does not invade the province of the jury, or lessen the State's obligation to prove malice. p. 428.

12. HOMICIDE. — *Intructions. — Malice.* — An instruction defining malice and charging that it may be implied from any deliberative or cruel act, is not erroneous on the theory that it points out one particular fact and advises the jury that other facts may be disregarded, since malice is an essential element of murder, and it is entirely proper to define it and state the legal implications which may arise from an unexplained and unjustifiable homicide. p. 429.

13. HOMICIDE.—*Appeal.—Harmless Error.—Instructions.*—An instruction directed only to the question of murder in the first degree, even if erroneous, was not harmful to defendant who was convicted of murder in the second degree. p. 429.

14. HOMICIDE.—*Manslaughter.—Provocation.—Adequacy.—Question for Jury.*—The provocation required to reduce an unlawful killing to manslaughter is that which under all the circumstances is deemed by the law adequate to excite sudden and angry passions from which the homicide occurs, and the question of whether there was adequate provocation is for the jury. p. 430.

15. HOMICIDE.—*Instructions.—Malice.*—Where the jury was charged fully on the question of malice, an instruction to the point that one who, unprovoked, attacks another for the purpose of wounding or killing him, who does nothing but attempt to ward off the attack, and flees, and is pursued and slain, the slayer is guilty of murder in the first degree, if the killing was done with premeditation, and murder in the second degree, if done with malice, but without premeditation, was not erroneous because it omitted the question of malice. p. 430.

16. HOMICIDE.—*Grade of Offense.—Instructions.*—An instruction in a homicide case stating that "to mitigate the offense to manslaughter, the facts must show that an act was done, * * * it must appear that the killing resulted from passion, * * *" and stating the character of provocation required, etc., did not

impose on the defendant the burden of mitigating the offense from murder to manslaughter, but merely charged what facts must be present to constitute the offense of manslaughter. p. 431.

17. CRIMINAL LAW.—*Trial.—Instructions.—Province of Court and Jury.*—The necessary elements to constitute an offense must be disclosed by the instructions, as matters of law, and the weight and sufficiency of the evidence to prove such elements are for the jury. p. 432.

18. HOMICIDE.—*Manslaughter.—Provocation.—Questions for Jury.* —Physical organization and state of defendant's mind, and the question of cooling time, may be considered by a jury in a homicide case in determining whether the offense is mitigated to manslaughter. p. 432.

19. CRIMINAL LAW.—*Appeal.—Review.—Instructions.*—Reversible error cannot be predicated on the refusal of instructions as to murder in the first degree, as to which defendant was acquitted, or of instructions as to a defense not presented by the evidence, or as to matters that were fully covered by the instructions given. p. 432.

20. CRIMINAL LAW.—*Appeal.—Review.—Misconduct of Counsel.— Instruction to Disregard.*—Where, on a trial for homicide, the prosecuting attorney stated to the jury that the venue was changed on defendant's application, and the court instructed the jury to disregard and not consider such statement, it was not error to overrule defendant's motion to set aside the submission and discharge the jury because of such statement. p. 432.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Prosecution by the State of Indiana against Oscar Welty. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Sheridan & Gruber* and *Blacklidge, Wolf & Barnes,* for appellant.

*Thomas M. Honan,* Attorney-General, *Thomas H. Branaman, Edwin Corr, James E. McCullough* and *A. G. Manning,* for the State.

MYERS, J.—Appellant was prosecuted upon indictment returned by the grand jury of Howard County, Indiana, for the alleged murder of one Edwards, and was convicted of murder in the second degree, and imprisoned for life. The indictment was in four counts, a motion to quash the

fourth of which was sustained, and the errors assigned and not waived are, in overruling appellant's motion for a new trial. The questions presented arise principally upon instructions given, and instructions requested and refused. In the order of presentation, instruction No. 26a is as follows: "If homicide be committed in a sudden heat, by the use of a deadly weapon, no provocation by mere words will reduce the killing to manslaughter. The question should never be, was there anger merely? But was there legal provocation to such anger? The use of a dangerous weapon under a provocation by words only, or under no provocation, is always evidence of malice aforethought. To constitute malice aforethought it is only necessary that there be a formed design to kill; and such design may be conceived at the moment the fatal stroke is given, as well as a long time before. Malice aforethought means the intention to kill; and when such means are used as are likely to produce death, the legal presumption is that death was intended."

As to this instruction the contention of appellant is, that by reason of other instructions given, the use of the words "no provocation by mere words *will reduce* the killing to manslaughter", for the reason that under our statute, the mere proof of killing fails to show the class of homicide, whether murder, manslaughter, or excusable killing, and that there is no presumption that the killing in the first instance is murder, and therefore needs to be reduced; that the burden is upon the State to establish a crime of higher degree than manslaughter; that the defendant was not bound to establish facts sufficient to *reduce* it from murder to manslaughter; also, that it is erroneous in the use of the following words, "The use of a dangerous weapon under a provocation by words only, or under no provocation, *is always evidence of malice aforethought*"; also, that to instruct that "the use of a dangerous weapon is always evidence of malice aforethought," is erroneous, where there is evidence tending to prove homicide under circumstances to constitute man-

slaughter, for the reason that it points out one particular fact, and advises that malice flows therefrom, and advises that the jury may disregard all other evidence tending to negative malice, and generally, that where the killing is admitted, and the facts are detailed by eye witnesses, and evidence is introduced placing the question of malice in issue, it is error to instruct that any particular act, or fact, raises a presumption, or inference of malice; for the reason that it advises the jury that they may disregard all other evidence tending to negative malice, and that malice must be proven beyond a reasonable doubt, under the continued presumption of innocence which attends a defendant charged with crime, through every step of a trial, and that this instruction violated the presumption of innocence, and that malice being a material fact to constitute murder in the second degree, it is a question of fact for the jury upon all the evidence, and that this instruction withdrew the question of manslaughter from the jury.

In order to have a full and correct understanding of the instructions in this case, it is necessary to look at the evidence. There is evidence tending to show that decedent did not bear a good reputation for peace and quietude, and that he had some reputation, known to appellant, as quarrelsome, and carried a knife, and had had some brawls. There is other evidence that he was peaceable and well disposed. The same thing, however, appears to have been true in some measure as to appellant's moral character. He was always armed, though he was a peace officer, but had many brawls. The evidence shows that appellant was called upon by decedent, with whom appellant had had several difficulties in a business way, and appellant claimed decedent had made threats against him, to prepare a conditional contract of purchase of a horse by decedent from one Thomas. It was at about 7:30 o'clock p. m. on a day in the middle of July; decedent was dissatisfied with the manner in which the contract was drawn, and arose to

leave the room, and stated that they, he and Thomas, would go somewhere else to have the contract drawn, though it was satisfactory to Thomas as drawn by appellant.   Appellant grabbed decedent roughly, and demanded pay for the work done.   Decedent broke away twice, and started to go down a stairway leading from appellant's office, when appellant shoved, or kicked him, at which time decedent struck him two or three times on the arm with a small stick, weighing four ounces, which he picked up in the hallway, and went on down to the foot of the stairway, from which he called up the stairway several times to Thomas to come on, and they would go somewhere else and get the contract drawn.   Appellant returned at once after kicking, or kicking at, or shoving, decedent, and stated to Thomas that he had been struck on the arm by Edwards, and as Edwards continued to call up the stairway, appellant started down the stairway with the remark that he would fix, or kill, the —— —— —— ——.  Appellant claims that Edwards in calling up the stairway called him a vile name. Thomas, in appellant's room with him, with an equal opportunity to hear, heard nothing of that kind.   Appellant upon making the remark attributed to him, went down the stairway to the bottom where decedent was, at which time there is evidence that appellant was cursing, and also evidence that when appellant came down the stairway decedent seemed scared, and tried to go away, and that appellant again said "you black —— —— —— ——, I am going to kill you," and struck decedent, and that decedent threw up his arm as if to push, or strike, or ward off a blow, dropped the small stick he had in his hand, and started to move off briskly, or to run, at which time, when something like fifteen feet from appellant, and moving away from him, appellant fired at him, and upon his reaching the corner of a street, appellant following him at about the same gait, if any difference gaining upon him, decedent turned

around the corner of a building to the left, and passed ten
or fifteen feet beyond the corner and in front of an automo-
bile adjoining the curb line on the north side of the street,
and into the cross street in an angling direction to the south-
east, and called out several times "stop," but appellant fol-
lowed him, and as appellant reached the curb line, he fired
again at decedent, who made a step or two, staggering for-
ward, and moved on in the street southeasterly, and appel-
lant followed into the roadway, where he stopped, raised his
right arm from his side, so that the revolver traveled up
the body of the man in front, then ten or twelve feet away
from him, and when the revolver was in line with the back
of decedent, he brought his left arm around in support of
the right arm, or took hold of the revolver with his left hand,
and fired; the body of decedent swayed a moment, and
stopped, his knees crumpled under him, and he fell forward
sidewise, turned over and groaned, threw his arm over his
face and exclaimed, "My God, he has killed me," and ex-
pired.     Appellant stood with his arm extended, and the re-
volver in his hand, until decedent turned over, where he
fell, when appellant, with the revolver in his hand, turned,
saying, "I'll show you how to call me a —— —— ——
——," and walked back to and up the stairway. There was
also evidence that appellant had been drinking more or less
for some time, and some witnesses believed he was somewhat
under the influence of drink, and others that he was not at
the time affected by it, and there was evidence that decedent
had said at the foot of the stairway something about being
able to whip appellant if he was down on the ground.    Ap-
pellant was in vigorous health, and weighed 210 pounds;
decedent was a colored man about 60 years of age, and
weighed from 140 to 150 pounds.    The postmortem exami-
nation showed that all three shots took effect in Edwards'
body, all three entering his back, two near together, through
the left shoulder, the third through the spine to the right of
the first lumbar vertebra, passed through the stomach, and

came out at the lower rib to the left of the middle line in front; this last shot is given as the death wound. Appellant had followed decedent about fifty feet, during all which time decedent was moving or running away from him, and he following to the extent of passing around and beyond the corner of a building, which decedent had turned, and going beyond the corner twenty to twenty-five feet, and out into the street before the last shot was fired. Decedent had no arms or knife, and the small stick which he had on the stairs, with which he struck appellant, was dropped by him at the foot of the stairs. Appellant testified that he called the attention of Thomas, the man in his office, to the fact that decedent called him a vile name. He is not corroborated by the witness. Appellant also testified that when decedent struck him in the hall or stairway, he thought Edwards had cut him, but he came back into his office, and found this was not so; he testified that he was angry, mad, and scared, and when at the bottom of the stairs, Edwards was saying something about him, and he went towards Edwards, and the latter raised his hand, and appellant thought he "had something," and "jumped back," and began shooting. He is not corroborated in any of these respects except as to his being angry, and as to Edwards throwing up his arm or hand at the foot of the stairs, as if to ward off, or strike, and as to the fact that Edwards was talking at the foot of the stairs. There is also evidence that immediately after being kicked or pushed by appellant at the head of the stairs, decedent as he went down said he would get even with appellant, or get him, or something of that kind. Appellant does not claim to have heard any remark by decedent at the foot of the stairs except the vile name attributed to him before he went down, in which he is not corroborated by any evidence, and after he went down, he claimed that decedent said something about getting him, and that appellant then advanced upon Edwards and the latter raised his hand, and he thought decedent had something and jumped

back, and decedent reached into his pocket, and then appellant began to shoot. He is not corroborated as to any attempt of decedent to reach a pocket. It must be apparent from this state of the evidence that no question of self-defense is presented, and the facts disclose an intention to kill.

Counsel for appellant rely upon the following cases in this State: *Field* v. *State* (1875), 50 Ind. 15, 16; *Miller* v. *State* (1871), 37 Ind. 432, 435; *Murphy* v. *State* (1869), 31 Ind. 511; *Clem* v. *State* (1869), 31 Ind. 480, 484; and *Ex parte Moore* (1868), 30 Ind. 197, in which different shades of the questions of malice and presumption are considered. In *Field* v. *State, supra,* the defendant and the man killed were strangers. The killing occurred in a general melee, a saloon brawl, in which a number of men were engaged, during which one Jones attempted to restrain Stout, one of the brawlers, by holding him, and as soon as the latter was released he attacked Jones, who in turn seized a billiard cue and was advancing upon him, when Field, a friend of Stout, struck Jones with another billiard cue and killed him. Under these circumstances, the court charged that, "If the evidence shows that the act was done with the intent to injure Philip Jones, and the means used, the instrument and manner of using it, showed such intent, malice is implied from the act," and it was held erroneous upon the ground that an intent to injure does not necessarily imply malice, and that the character of the act in cases like that, as to whether there was malice, was a question for the jury; that whether an act is malicious depends on whether it is wicked, or wrongful. In *Miller* v. *State, supra,* the charge was, "if a man use a deadly weapon in killing his adversary, the law implies malice from its use, except where the killing is excusable." This instruction was based upon a rather extraordinary state of facts showing that the defendant had been previously assaulted by the decedent and otherwise mistreated, and had previously fled from an attack, and was again confronted by his former assailant. The instruction

was held to be too narrow, because it told the jury in effect that when the killing is with a deadly weapon, the law implies malice from that fact, and eliminated the question of manslaughter wholly. In *Clem* v. *State, supra,* the instruction was that "murder is conclusively inferred from the deliberate use of a deadly weapon." This instruction, as in that case, would take away the defense of self-defense, or killing under justifiable provocation in any case. In *Ex parte Moore, supra,* it is said that "where one person unlawfully and purposely kills another, malice, in the absence of rebutting evidence, is presumed from the act. But when no express malice is shown, and it appears that the act, though voluntary, was the result of a sudden heat, or transport of passion, upon a sufficient provocation, it rebuts the presumption of malice, and reduces the offense to manslaughter." This case arose upon application to be let to bail, and the court went into the evidence for that purpose, upon facts which showed great provocation the court held that it was not clear that cooling time sufficient had elapsed, in order to show that the killing was malicious, though the time elapsing between the assault and the shooting was only about five minutes, and in that interval the petitioner had gone to his home and gotten a revolver with which the killing was done, but the entire movement of the petitioner was as intimately associated in point of time, as it could take place.

Many cases from other states are collected and cited by appellant's able and industrious counsel, in support of their contentions regarding this instruction. We have examined all of them, involving much time and labor, in view of the rights and interest of appellant. It may be said to be the consensus of these cases that the law presumes malice in an unexplained killing with a deadly weapon, but that when all the facts attendant upon the killing are before the jury, there is no room for a presumption of malice, and malice must be proved beyond a reasonable doubt without presumptions to aid it, the same as with respect to other ma-

terial questions in order to constitute the degree of crime of which one is convicted. These authorities, if they can be said to go further than to hold that being a presumption of law, it yields to evidence of want of malice, or evidence which tends to show want of malice, overlook two propositions which are well grounded in our own cases. First, that a presumption like a fact proved, remains available to the party in whose favor it arises, until overcome by opposing evidence. In reality to our minds they go no further. *Steinkuehler* v. *Wempner* (1907), 169 Ind. 154, 161, 8 N. E. 482, 15 L. R. A. (N. S.) 573; *Mobley* v. *Ryan* (1852), 14 Ill. 51, 56 Am. Dec. 488; *Colburn* v. *Averill* (1849), 30 Me. 310, 50 Am. Dec. 630; *Thompson* v. *Porter* (1850), 4 Strob. Eq. (S. C.) 58, 53 Am. Dec. 653; *Dawson* v. *Vaughan* (1873), 42 Ind. 395, 397; *Bates* v. *Pricket* (1854), 5 Ind. 22, 61 Am. Dec. 73; *Ewing* v. *Sills* (1848), 1 Ind. *125; *Nichols* v. *Baltimore, etc., R. Co.* (1904), 33 Ind. App. 229, 237, 70 N. E. 183, 71 N. E. 170. Second, that malice may be presumed or inferred from the character of the act, the manner and circumstances of its execution, and from the character of the weapon used. *Coolman* v. *State* (1904), 163 Ind. 503, 507, 72 N. E. 568; *Harris* v. *State* (1900), 155 Ind. 265, 275, 58 N. E. 75; *Starr* v. *State* (1903), 160 Ind. 661, 664, 67 N. E. 527; *Lee* v. *State* (1901), 156 Ind. 541, 60 N. E. 299; *Bridgewater* v. *State* (1899), 153 Ind. 560, 563, 55 N. E. 737; *Brown* v. *State* (1897), 147 Ind. 28, 33, 46 N. E. 34; *Deilks* v. *State* (1894), 141 Ind. 23, 26, 40 N. E. 120; *Newport* v. *State* (1894), 140 Ind. 299, 307, 39 N. E. 926; *Walker* v. *State* (1893), 136 Ind. 663, 669, 36 N. E. 356; *Aszman* v. *State* (1889), 123 Ind. 347, 356, 24 N. E. 123, 8 L. R. A. 33; *Koerner* v. *State* (1884), 98 Ind. 7, 8; *McDermott* v. *State* (1883), 89 Ind. 187, 193; *Coghill* v. *State* (1872), 37 Ind. 111, 114; *Commonwealth* v. *Webster* (1850), 59 Mass. (5 Cush.) 295, 304, 52 Am. Dec. 711. In a number of the states the rule is adhered to which upholds the instruction.

*Kennedy* v. *State* (1906), 40 South. (Ala.) 658; *Gater* v. *State* (1904), 141 Ala. 10, 37 South. 692; *State* v. *Uzzo* (1907), 6 Pennewill (Del.) 212, 65 Atl. 775, 777; *State* v. *Blackburn* (1892), 7 Pennewill (Del.) 479, 75 Atl. 536; *Marshall* v. *State* (1884), 74 Ga. 26; *State* v. *Prolow* (1906), 98 Minn. 459, 108 N. W. 873; *State* v. *Lautenschlager* (1876), 22 Minn. 514; *State* v. *Potts* (1888), 100 N. C. 457, 6 S. E. 657; *State* v. *Smith* (1877), 77 N. C. 488; *State* v. *Henderson* (1906), 74 S. C. 477, 55 S. E. 117; *State* v. *Rochester* (1905), 72 S. C. 194, 51 S. E. 685; *State* v. *McDaniel* (1903), 68 S. C. 304, 47 S. E. 384, 102 Am. St. 661.

We had occasion in the case of *Cleveland, etc., R. Co.* v. *Lynn* (1912), 177 Ind. 311, 95 N. E. 577, 98 N. E. 67, on petition for rehearing, to point out some distinctions at least between presumptions of law, founded upon an established or undisputed fact, upon which the law founds its own inferences, and inferences of fact, from other facts, which are questions for the jury, citing, 2 Chamberlayne, Mod. Law of Ev. §1082, and specific cases. We there called attention, also, to the rule that the so-called burden of proof, is not affected by the creation, or presence of a presumption of law, from an undisputed, or proved fact. 2 Chamberlayne, Mod. Law of Ev. §1018; see, also, *Steinkuehler* v. *Wempner, supra.*

"Presumptions of law are usually grounded upon public policy, social convenience or safety, and are either such as the statutes expressly declare, or such inferences as the courts generally, in their legal experiences, have recognized and sanctioned in the administration of justice." *Modern Woodmen, etc.* v. *Craiger* (1910), 175 Ind. 30, 92 N. E. 113, 93 N. E. 209.

It is a presumption grounded upon public policy and safety which the law itself interposes, from an unexplained homicide with a deadly weapon. The cases are all agreed that the law presumes malice from an intentional killing, and if the killing is unexplained, the

law fixes its character as malicious. If appellant's theory be
correct, there could be in the practical administration of jus-
tice, no room for this well-established rule of presumptions,
because in many instances there could be only the homicide,
and the instrument of killing proved, and if the case should
be taken out of the category of legal presumptions, and the
question of malice be one for the jury without the aid of
the legal presumption arising from the use of a deadly
weapon, or from the presumption that one intends to do the
thing, which from the nature of the instrument with which
it is accomplished, could have no other result, courts would
be greatly hampered in the administration of justice. On
the other hand, if the attendant facts are shown, the legal
presumption gives way to the presumption of innocence, and
the question of malice becomes one for the jury. If the de-
fendant is the sole repository of the facts, other than the
fact of the homicide and the instrument, all he need do is
to stand upon his constitutional right, say nothing, and he
must go acquit. It is this possible condition which necessi-
tates the presumption as a matter of public policy.

There is also as much reason for the presumption of malice
from the fact of an unexplained homicide by a deadly
weapon, as for the continued presumption of the innocence
of the accused. The former grows out of its public necessi-
ty, and the latter out of hostility to ancient forms of criminal
procedure, where not only the burden was upon an accused,
trammeled by his inability to testify in his own behalf, and
by other restrictions, which were deemed incompatible with
liberty and due regard to freedom regulated by law. To the
mind of the writer, the conflict in the cases is more apparent
than real, they all rest upon the apparent conflict between
a presumption of law as to malice, under certain circum-
stances, and the other well-recognized presumption of inno-
cence which attends an accused at every stage of a trial,
upon the theory that a presumption of malice destroys the
force and effect of the latter presumption, and shifts the

burden of proof to the defendant, which is a misconception of the actual situation. There cannot be any less, or real reason for the presumption where the facts are all disclosed, than where they are not, so far as the presumption itself is involved. If the facts are all disclosed, the presumption which is a rebuttable one, will disclose either actual malice, or malice inferable from the facts, or the want of malice, and thus grade the offense, but one charged with crime has no natural, constitutional, or legal right to be freed from the presumptions which attach to the acts of men in every other relation of life, and which ages of experience have demonstrated to be necessary in the conduct of actions in courts.

The burden of proof never shifts, in either a civil or criminal case. In a civil action a disclosed state of affairs may call upon a party for an explanation, if he would

7. avoid a *prima facie* case. In *Carver* v. *Carver* (1884), 97 Ind. 497, 511, it is said, "This imposition of the burden to meet a *prima facie* case, or to show matter in avoidance, is not the shifting of the burden of proof as to the fact in issue." A number of cases are there pointed out, and the doctrine has been since reaffirmed. *Fudge* v. *Marquell* (1905), 164 Ind. 447, 72 N. E. 565, 73 N. E. 895; *Cunningham* v. *Hoff* (1888), 118 Ind. 263, 20 N. E. 756. See, also, Lawson, Presumptive Ev. 524; *Commonwealth* v. *Davis* (1841), 43 Mass. (2 Met.) 329; *Commonwealth* v. *Kimball* (1837), 41 Mass. (24 Pick.) 366.

A familiar example in criminal procedure is the question of sanity. The law presumes every man to be sane if his sanity is put in issue by a defendant charged with crime, but it has never been supposed, nor is it the practice when such a plea is filed, that the State need prove sanity, it may rest upon the *prima facie* case made by the legal presumption as a proposition of experience that men are generally of sound mind, but if a defendant shall introduce evidence which may raise a doubt, or which tends to show unsoundness, the State still has the burden of show-

ing sanity beyond a reasonable doubt. Other instances might be multiplied, as, the presumption of ability in an adult male to commit rape; presumption of larceny from having stolen articles in possession; capacity for crime; power of procreation; child-bearing; presumption that one intends the natural result flowing from a particular act, etc.

8.    A presumption of law, is in effect an administrative assumption, or determination for procedural purposes; it only makes a *prima facie* case, and the truth of the assumption is always open to rebuttal. In other words, the presumption, or assumption for procedural purposes, gives way before evidence which raises a doubt, or explains the act, that is, the presumption of law disappears, which is not true as to a question of fact, or an inference of fact, which is a question wholly for the jury. The difficulty in criminal cases, as appears from the cases, seems to have grown out of the fact of confusing procedural or administrative assumptions, or presumptions, with presumptions of innocence, and the burden of proof, and this in turn, doubtless out of the law's tender regard for the liberty of the individual, though in civil procedure the rule of raising a *prima facie* case from presumptions, has not we think been questioned. The rule seems to be well stated in *Hawthorne* v. *State* (1881), 58 Miss. 778, as follows, "We understand the settled rule to be this: The law presumes the accused to be innocent of the crime charged, until the contrary is made to appear; but when it is shown that he killed the deceased with a deadly weapon, the general presumption of innocence yields to the specific proof of such homicide, and the law infers that it was malicious, and therefore murder, because, as a rule, it is unlawful to kill a human being, and is murder if not something else; and as special circumstances alone will vary the legal view of homicide so as to relieve it from the character of murder, it is infered or presumed to be such from the fact of killing unexplained; but if the attendant circumstances are shown in evidence, whether on

the part of the State or the accused, the character of the killing is to be determined by considering them, and it is then not a matter for presumption, which operates in the absence of explanatory evidence, but for determination from the circumstances shown in evidence.'' The distinction is also pointed out that the presumption of innocence yields before proof, precisely as does the presumption of malice, and yet it is as strong legal presumption as that of malice in cases where malice is presumed. 2 Chamberlayne, Mod. Law of Ev. §§936, 937, 1174, 1223, 1224, 1225; *State* v. *Rochester, supra; Brown* v. *State* (1878), 4 Tex. App. 275.

Our conclusion is, that whether it be a presumption of malice, or of innocence, it is an administrative assumption of a *prima facie* character, and that each yields before evidence showing the facts, and that the burden of proof is not shifted in such cases. We premise this much for the reason that there has been much refinement of reasoning upon the question, much confusion of terms as to presumptions, proof, and burden of proof, and to our minds failure to recognize the real and practical distinctions, which have furnished the grounds of insistence by the able counsel for appellant in this case, that the doctrine of *Beauchamp* v. *State* (1842), 6 Blackf. 299, and *Binns* v. *State* (1879), 66 Ind. 428, 433, is erroneous. In the former the exact language of instruction No. 26a was approved, and in the Binns case the second portion approved.

It is to be noted that under the evidence, there is no element of self-defense, and that manslaughter cannot in the very nature of the case arise in self-defense. *McDermott* v. *State, supra.* That case recognizes the rule, as we understand it and here attempts to show the reason, that the presumption of malice from an unexplained homicide by the use of a deadly weapon, gives way before proof of the facts, as disclosed by instruction No. 14 in that case, and the court's reasoning on pages 193, 194. It is to be further noted that the instruction is dealing

with the subject of homicide by the use of a deadly weapon arising from provocation by mere words, or no provocation, and the instruction cannot be dissected, and its parts disasociated from each other, or from other instructions in the case. *Shields* v. *State* (1897), 149 Ind. 395, 406, 49 N. E. 351, 406, and cases cited; *Goodwin* v. *State* (1884), 96 Ind. 550, 559.

An unexplained homicide with a deadly weapon upon a provocation by words only, can have no other interpretation than that of malice. It implies malice, because the 10. unexplained killing of a human being is unlawful, and public policy requires that an implication of malice shall arise, hence it is not a question of reducing the offense of manslaughter because the State has a right to stand on a *prima facie* case, and if it is rendered valueless by the evidence, the State still has the burden of proving malice, if it insists upon a conviction of murder. *Harris* v. *State, supra; Coolman* v. *State, supra; Rauck* v. *State* (1886), 110 Ind. 384, 388, 11 N. E. 450; *Henning* v. *State* (1886), 106 Ind. 386, 401, 6 N. E. 803, 7 N. E. 4, 55 Am. Rep. 756; *Boyle* v. *State* (1885), 105 Ind. 469, 481, 5 N. E. 203, 55 Am. Rep. 218; *Binns* v. *State, supra; Murphy* v. *State, supra; Beauchamp* v. *State, supra.* Nor is the 11. instruction bad in informing the jury that the use of a deadly weapon under a provocation by words only or under no provocation, is evidence of malice, as changing the burden of proof, or as pointing out a particular fact and advising the jury that it may disregard all other evidence tending to negative malice; it only points out two elements of malice as proper for their consideration as a matter of law, and excludes none, and does not invade the province of the jury to determine the question, or lessen the obligation of the State to prove malice, if it insists on the offense as murder. *Harris* v. *State, supra; McDermott* v. *State, supra; Coghill* v. *State, supra; Coolman* v. *State, supra; Commonwealth* v. *Webster, supra; Fifer* v. *Ritter*

(1902), 159 Ind. 8, 11, 12, 64 N. E. 463, and cases there cited; *Newport* v. *State, supra;* Subd. 5, §2136 Burns 1908, Acts 1905 p. 584, §260. This instruction was also approved in *Finn* v. *State* (1854), 5 Ind. 400, 402; *Fahnestock* v. *State* (1864), 23 Ind. 231, 262, 263.

Instruction No. 14 is complained of on the ground that, it is incorrect to charge that malice may be implied from any deliberative or cruel act, where there is evidence tending to prove self-defense or manslaughter, for the alleged reason that it is error to point out one particular fact, because it advises the jury that it may disregard other facts. The insistence gives too narrow a scope to the instruction. It defines malice, and the inference thereof that may follow an unexplained homicide without justification, without express proof of malice. If justification appears from the evidence, the presumption disappears, but that it arises *prima facie* from an intentional killing by a deadly weapon without justification, or may be implied from any deliberate or cruel act against another cannot be otherwise than true. Malice is an essential element of murder, and it is entirely proper to define it, and to state the legal implications which may arise from an unexplained and unjustifiable homicide. The major portion of the instruction is identical with the instruction in *State* v. *Gee* (1885), 85 Mo. 647, 649, and the doctrine declared in *Commonwealth* v. *Webster, supra,* and has the approval of this court. *Harris* v. *State, supra; McDermott* v. *State, supra; Coghill* v. *State, supra.*

Instruction No. 15 is complained of. The instruction was only directed to the question of murder in the first degree, and was correct within the rule in, *Koerner* v. *State, supra; McDermott* v. *State, supra.* As appellant was not convicted of murder in the first degree, the instruction if erroneous, was not harmful to him. *Tyrrel* v. *State* (1912), 177 Ind. 14, 97 N. E. 14, and cases there cited. Instruction No. 19 was taken verbatim from *Commonwealth*

v. *Webster, supra,* and has been approved by this court.
*McDermott* v. *State, supra; Harris* v. *State, supra; Coghill*
v. *State, supra; Commonwealth* v. *York* (1845), 50 Mass.
(9 Met.) 93, 104, 43 Am. Dec. 373; 2 East's Pleas of the
Crown §12, chap. 5.   We cannot discover that the instruc-
tion shifts the burden of proof, or that it authorizes one
presumption from another, or that the circumstances rebut-
ting malice are to be established by the defendant.   Malice
is presumed from an unexplained homicide by the use of a
deadly weapon; it must follow that a *prima facie* case as to
malice is thereby presented, and it is no hardship if the evi-
dence does not disclose the circumstances which tend to rebut
the presumption.   It is applied in every other kind of cases,
and the analogies are the same.   The presumption readily
yields to evidence, and as is said in *Commonwealth* v. *York,*
*supra,* it "is not an artificial rule of law, but a natural in-
ference legitimately deduced from facts admitted or proved,
and that it is not peculiar to the law of homicide, but pre-
vails in all other departments of the criminal law," where
the cases are reviewed.   The instruction taken as a whole
correctly states the law as applied to the evidence, and ap-
pellant's claim of provocation to the act of killing.

14.   Whether there was adequate provocation was a ques-
tion for the jury.   *Ex parte Moore, supra; Longley*
v. *Commonwealth* (1900), 99 Va. 807, 811, 814.   The prov-
ocation required to reduce an unlawful killing to man-
slaughter, is that provocation which under all the circum-
stances is deemed by the law adequate to excite sudden and
angry passions from which the homicide occurs.   *Henning*
v. *State, supra; Ex parte Moore, supra.*   The instruction
could certainly not have harmed appellant, under the evi-
dence.

Instruction No. 26 is assailed because it omits the ques-
tion of malice.   The jury was charged fully upon the
15.   question of malice, and this instruction only goes
to the point that one who unprovoked, attacks an-

other for the purpose of wounding or killing him, who does nothing but attempt to ward off the attack, and flees, and is pursued and slain, the slayer is guilty of murder in the first degree, if the jury find that it was done with premeditation, and murder in the second degree if done with malice, but without premeditation. As a matter of law, a killing under the circumstances described, implies malice, and it is the duty of the court to instruct as to the law. It does not imply premeditation, but malice being implied as a matter of law from an intentional killing with a deadly weapon without just provocation, legal excuse, or justification, as to which all the cases agree, there was no error in giving the instruction. *Murphy* v. *State, supra.*

Instruction No. 27 is a copy of an instruction approved in *Brown* v. *State* (1898), 62 N. J. L. 666, 42 Atl. 811, 827.

16. The use of the phrase, "to mitigate the offense to manslaughter, the facts must show that an act was done, * * *; it must appear that the killing resulted from passion, * * *. The provocation must be of such a character," etc., is objected to on the ground that it was only necessary that the evidence create a reasonable doubt, and that it imposed upon appellant the burden of mitigating the offense from murder to manslaughter, and that it is too strict in requiring the provocation to be of that character that the defendant could be considered not the master of his understanding, and that it instructs the jury that if sufficient time has elapsed as is reasonably sufficient for reason to resume its sway, the offense is not mitigated to manslaughter, for the reason that if the temperament of the defendant was such that he was still controlled by passion, he would still be guilty of manslaughter only. The instruction is not open to either of these objections. It only charges what must be present to constitute the offense of manslaughter, that is, that the facts must show a homicide under certain conditions, or the crime of manslaughter did not arise. *Henning* v. *State, supra.* The necessary elements

to constitute an offense must be disclosed by the instruction, as matters of law; the weight and sufficiency of the evidence to prove them is for the jury. Subd. 5, §2136 Burns 1908, Acts 1905 p. 584, §260; *Fifer* v. *Ritter, supra.* It would be a dangerous precedent to set, to attempt to fix a rule of law as applying to different temperaments, but physical organization, and state of mind, and the question of cooling time may be considered by a jury. *Ferguson* v. *State* (1874), 49 Ind. 33, 35; *Ex parte Moore supra; Aszman* v. *State, supra.*

Instruction No. 23 is challenged. It was as favorable to appellant as the broadest claim which could be made under the evidence, and has the direct approval of *Longley* v. *Commonwealth, supra.*

Error is claimed in the refusal of the court to give numerous instructions tendered by appellant. We have examined them all in the light of appellant's objections. Some of them go to the question of murder in the first degree, as to which appellant was acquitted. Others go to the question of self-defense, which though covered by other instructions, is clearly not presented by the evidence. The other claims are fully and fairly covered by the instructions given, and taken as a whole stated the law applicable to the evidence, and as favorably to the defendant as he could possibly insist.

In the opening statement to the jury the prosecuting attorney stated to, and in the presence of the jury, that appellant had taken a change of venue to Clinton County. When the statement was made, appellant's counsel objected, and requested the court to instruct the jury to disregard the statement as improper, and the court did so fully, and with the consent of appellant the jury were allowed to separate until the next morning, and upon the convening of court, appellant moved the court to set aside the submission, and discharge the jury on account

of the statement, which motion the court overruled and again charged the jury at length, that it should wholly disregard the statement as a matter which the jury had no right to consider. There was no reversible error in this action. *Smith* v. *State* (1905), 165 Ind. 180, 185, 74 N. E. 983, and cases there cited; *Livingston* v. *State* (1894), 141 Ind. 131, 133, 134, 40 N. E. 684; *Lewis* v. *State* (193), 137 Ind. 344, 351, 36 N. E. 1110.

Upon the whole case we have no doubt that appellant had a fair and impartial trial, and that the conviction was fully warranted upon the evidence. The judgment is affirmed.

Spencer, J., dissents from this opinion as to the correctness of instruction 26a, and also from the correctness of the judgment.

NOTE.—Reported in 100 N. E. 73. See, also, under (1) 21 Cyc. 800, 1012; (2) 16 Cyc. 1087; (3, 6, 10) 21 Cyc. 877; (4) 16 Cyc. 934; (5) 16 Cyc. 1073; (7) 16 Cyc. 926; (8) 16 Cyc. 1087; (9) 12 Cyc. 654; (11) 21 Cyc. 1037, 1039; (12) 21 Cyc. 1038, 1039; (13) 21 Cyc. 1094, 1096; (14, 18) 21 Cyc. 1028; (15) 21 Cyc. 1039; (16) 21 Cyc. 1063, 1069; (17) 12 Cyc. 587, 592, 614; (19) 12 Cyc. 662, 932; (20) 12 Cyc. 585. As to law of self-defense, see 74 Am. St. 717; 109 Am. St. 804. As to condition of mind which will reduce murder to manslaughter, see 134 Am. St. 726; 9 Ann. Cas. 929. As to presumption of malice from killing, see 4 L. R. A. (N. S.) 934. As to the presumption of implied malice arising from act of killing, see 38 L. R. A. (N. S.) 1077. As to what the term "malice aforethought" in defense of murder now means and how the courts should deal with it in charging the jury, see 38 L. R. A. (N. S.) 1054. On the necessity of defining malice aforethought in prosecution for murder, see 38 L. R. A. (N. S.) 1104. For the submission of question of lower degree to jury in prosecution for homicide, see 21 L. R. A. (N. S.) 18.