BRATTAIN *v.* STATE OF INDIANA

[No. 28,051. Filed June 14, 1945. Rehearing Denied September 25, 1945.]

490

Fred E. Hines, of Noblesville, for appellant.

James A. Emmert, Attorney General, and Frank E. Coughlin, First Assistant Attorney General, for the State.

STARR, J.—Appellant was indicted for murder in the second degree. He entered a plea of not guilty and filed an answer alleging that at the time of the commission of the alleged offense he was temporarily insane. There was a trial by jury, resulting in verdict of guilty as charged, and fixing his sentence at imprisonment in the Indiana State Prison during life. Motion for a new trial was overruled, and judgment was entered on the verdict.

On November 7, 1943, appellant and his mother, Margaret Brattain, a woman about 78 years of age, resided together on a farm near Clarksville, in Hamilton County. About noon of that day, Earl Burke, who lived close by, heard a scream and pleading, whereupon he drove to appellant's home, where he found the deceased lying in the yard, covered with blood, and her clothing disarranged. The appellant, who was crouched over her, and seemed to have his hands on her face and neck, yelled and ran behind the house. There was blood on the porch, scattered in the yard, and on a two-by-six board lying in the yard. In the kitchen the table was upside down, food was scattered about the room, and dishes were broken. The witness Burke, being fearful that the appellant might injure himself or the witness, drove to the home of one Roy Strite, about 40 or 50 rods from appellant's home. The appellant jumped on the running board of a passing automobile and, as it turned

into Strite's driveway, jumped off and started away. Questioned by Strite, the appellant said that somebody over there was trying to kill his mother, and he asked Strite to help him, whereupon appellant and Roy Strite started for appellant's home. On the way they talked about crops and wages, and the appellant said, "If I have to leave, why don't you buy them cows?" He further said, "You wouldn't be hurt at $125 apiece on them." Arriving at appellant's home, Strite approached the mother, who said, "Roy, for God's sake, do something for me." He asked her what was the matter, and who did it, and in appellant's presence she said, "You know. Get him away from here." Strite asked the appellant to get a comforter, but the appellant, saying that it was not his mother, refused to do so. Another witness, one Almyr Bradway, entered the house with appellant to get a cover. Inside, the appellant started to light a lamp, although it was about noon. The appellant insisted that it was not his mother, and said somebody threw her out of a car. Bradway then got a cover, and it was placed over the mother.

Strite then took appellant up to the cross roads, and, to keep appellant's mind occupied, suggested to him that they hide in the weeds along the road. The appellant said there were no weeds along there, and none were there. Appellant stated that if his mother died, he would get a long "stretch" over it, and that the sheriff would get them anyway. The sheriff arrived, and as they entered his automobile and were driving to appellant's home appellant said, "I told you they would get us." There was conversation concerning the time of day, one witness saying it was ten minutes to three, but the appellant insisting it was ten minutes to two, and it was in fact ten minutes to two.

The sheriff took the appellant to jail without difficulty,

and then returned to appellant's home in search of a knife. Finding none, he went back to the jail and found a knife stained with human blood stuck in the top of appellant's boot. Shortly after he was taken to the jail the appellant fell asleep, and slept until about eight o'clock that evening.

The evidence discloses that deceased had suffered multiple contusions, lacerations, cuts and stab wounds about the head, neck, face, and body, and had multiple fractures of the ribs on both sides of the chest. She died about 11 o'clock P. M., on November 8, 1943, as the result of said injuries.

The evidence further discloses that the appellant habitually drank intoxicating liquors; that he had been uniformly kind to his mother, and had cared for and supported her. He made a written statement and later testified to the effect that he had drunk heavily of intoxicating liquor on the night of November 6th, and on the morning of November 7th had continued to drink intoxicating liquor, and that he had no recollection of anything that occurred from just before the noon meal until he woke up in jail that evening about eight o'clock.

The evidence is conflicting as to whether the appellant was sane or insane at the time of the commission of the alleged offense. The witness Strite, when asked, "Was he intoxicated at the time, in your opinion," answered, "I wouldn't say so."

Following the appellant's plea of insanity, the court, pursuant to § 9-1702, Burns' 1942 Replacement, § 2216, Baldwin's 1934, appointed three physicians to examine him, to which the appellant objected. These physicians examined the appellant on Monday prior to the trial and testified that in their opinion at the time of the examination he was of sound mind. One of the physicians, in response to a hypothetical question put to him

embodying in substance the facts surrounding the commission of the alleged crime, stated that in his opinion the appellant was sane at the time the alleged crime was committed.

The sole error assigned on appeal is the ruling on the motion for new trial. There are 23 causes set out in said motion for a new trial, five of which relate to the giving of instructions tendered by the State, and seven to the giving of instructions by the court on its own motion. No specific objection to the giving of any of these instructions is shown in the record, therefore claimed error on this ground is not available. Rule 1-7, 1943 Revision.

As his first cause for new trial, the appellant contends that the court erred in refusing to give to the jury his tendered instruction No. 1, which was a peremptory instruction to find for the defendant. His 20th cause is that the verdict is contrary to law, and 21st, that the verdict of the jury is not sustained by sufficient evidence. Since appellant is only attempting to question the sufficiency of the evidence under each of these assignments, they will be considered together.

Appellant contends that there was no evidence tending to show that the appellant killed the deceased, nor was there any evidence tending to show that the appellant unlawfully, feloniously, purposely and maliciously did any act which caused the death of the deceased, nor that the appellant had sufficient mental capacity to form an intent to commit the crime charged. It is our opinion that there was ample evidence to go to the jury on the question as to who killed the deceased. The undisputed evidence shows that the deceased sustained extensive cuts, lacerations and stab wounds, and that a knife stained with human blood was found stuck in the boot of appellant; also, that the appellant was

seen stooping over said deceased when she was lying in the yard suffering from her various wounds, and that his arms and hands were covered with blood. The undisputed evidence further shows that when the deceased was asked who did it, in the presence of the appellant, she said, "You know. Take him away." The fact as to who killed the deceased can be proved by circumstantial evidence. There was ample circumstantial evidence from which the jury could reasonably have inferred not only that the appellant killed the deceased, but that in committing said act he made effective use of a deadly weapon, to-wit, a knife; and from the use of such weapon the jury had a perfect right to find that said crime was committed unlawfully, purposely, and with malice. *Aszman* v. *State* (1889), 123 Ind. 347, 24 N. E. 123, 8 L. R. A. 33; *Welty* v. *State* (1913), 180 Ind. 411, 100 N. E. 73; *Landreth* v. *State* (1930), 201 Ind. 691, 171 N. E. 192, 72 A. L. R. 891. It was unnecessary to establish a motive for the killing, where the criminal act causing death was otherwise fully established. Ewbank's Indiana Criminal Law (2d Ed.), § 888; *Wheeler* v. *State* (1902), 158 Ind. 687, 63 N. E. 975; *Morgan* v. *State* (1921), 190 Ind. 411, 130 N. E. 528.

It is true that where the defense of insanity is pleaded the burden rests upon the State to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the alleged crime, and said burden never shifts, but the presumption of sanity is sufficient to constitute a prima facie case in favor of the State where there is no evidence to dispute it, so that the State is not required to introduce evidence in chief to prove the sanity of the defendant; but when, as in this case, evidence is introduced upon that issue, the same becomes a question

of fact for the jury, who have a right to consider all of the evidence having a bearing on the issue, whether introduced by the State or by the defendant. *Walters* v. *State* (1915), 183 Ind. 178, 108 N. E. 583. In our opinion there was ample evidence produced by the State to warrant this case going to the jury on this issue.

Appellant contends in his second specification that the court erred in not giving instruction No. 5 as asked and tendered by the defendant. The proposition of law embraced in this instruction was fully covered by the instructions given by the court, particularly instruction No. 5 tendered by the State and given by the court.

Under his specification 4, the appellant complains of the refusal of the court to give his tendered instruction No. 6, as follows:

"Mere drunkenness does not excuse or palliate an offense but may produce a state of mind which incapacitates the party from forming or entertaining a specific intent. If the mental condition is such that a specific intent can not be formed, whether this condition is caused by drunkenness or otherwise, a party can not be said to have committed an offense, a necessary element of which is that it be done with a specific intent, and in this case if you find that the defendant was intoxicated to such an extent that he was incapable of forming an intent to do the acts as alleged in the indictment he should be acquitted."

This instruction was properly refused in this particular case. It is true that evidence of intoxication is competent in a prosecution for any crime in which a specific intent is an essential ingredient of the offense, and when the degree of intoxication is such as to render a person incapable of entertaining a specific intent it is an effective defense as to such crimes. *Booher* v. *State*

(1901), 156 Ind. 435, 60 N. E. 156, 54 L. R. A. 391; *Aszman* v. *State, supra.* But it must be remembered that the offense charged herein includes the lesser offense of manslaughter, where no specific intent is required in order to support a finding·of guilty. Gillett on Criminal Law (2nd Ed.), § 499. This being the law, the jury would not have been warranted in acquitting the defendant on the sole ground that he was so intoxicated as to be incapable of forming a specific intent.

Appellant's causes 9, 10, 11, and 22 have to do with the appointment by the court of three physicians at the time that the appellant filed his plea of insanity, and to permitting each of said physicians to testify as to the sanity of the appellant ·at a time after the commission of the alleged crime. It is contended by the appellant that his sanity at the time of such examination was not in issue, as he had pled "temporary insanity," and that he was insane only on the day that the alleged crime was committed. The appointment of these physicians was made pursuant to § 9-1702, Burns' 1942 Replacement, § 2216, Baldwin's 1934, which specifically provides that the court shall, upon plea of insanity, make such appointment. This particular statute makes no provision for a. plea of "temporary insanity." It is our opinion that the plea filed by the appellant was in effect a plea of insanity and that the court not only had the power but it was his duty upon the filing of such plea to make. such appointment of the physicians; that by making such plea, the appellant invited the court to do so, and that it was proper that such physicians be heard and allowed to testify at the trial.

As his 19th cause for new trial, appellant contends that the court erred in not submitting to the jury the

answer of the defendant to the indictment, along with the indictment. Assuming that such was the duty of the court, the appellant cannot now be heard to complain of the court's failure in that respect, as the record does not disclose that he made any objection to the court's failure to submit said answer, or that he requested that it be submitted.

Finally, for his 23rd specification, the appellant complains of the refusal of the court to grant his application for a change of venue from the county. It is specifically provided by § 9-1305, Burns' 1942 Replacement, § 2226, Baldwins' 1934, that in all cases not punishable by death, when the affidavit for a change of venue is founded upon excitement or prejudice against the defendant, it is discretionary with the court whether or not such change shall be granted. Unless there is an abuse of such discretion, the ruling of the trial court will not be disturbed. In the case before us there is nothing in the record to disclose any abuse of such discretion as the appellant has failed to incorporate in the record the affidavits in support of his motion for change of venue from the county. Such affidavits can only be brought into the record by a special bill of exceptions. *Day* v. *State* (1934), 207 Ind. 273, 192 N. E. 433. This the appellant has failed to do.

We have considered all of the questions presented by the appellant in his brief and find no reversible error.

Judgment affirmed.

Note.—Reported in 61 N. E. (2d) 462.