*E. R. & J. L. Wilson*, for appellants.

*H. W. Harrington* and *C. A. Korbly* for appellee.

———o———

## Ex Parte Moore.

**Murder.**—*Habeas Corpus.*—*Bail.*—*Appeal.*—On appeal from the refusal of a judge to admit to bail a prisoner committed on a charge of murder, the Supreme Court will weigh the evidence and determine the facts, as if trying the case originally.

**Same.**—*Malice.*—Where one person unlawfully and purposely kills another, malice, in the absence of rebutting evidence, is presumed from the act; but where no express malice is shown, and it appears that the act, though voluntary, was the result of a sudden heat, or transport of passion, upon a sufficient provocation, it rebuts the presumption of malice, which is an essential ingredient of the crime of murder in the first or second degree, and reduces the offense to manslaughter.

**Same.**—The crime of murder requires the mind to have acted from deliberation and intelligence, and where it is clouded by passion, the result of a sufficient provocation, the killing is no more than manslaughter.

**Same.**—*Evidence.*—On an application by a person charged with murder in

the first degree to be admitted to bail, it appeared in evidence that the prisoner and the deceased, being friends, between whom there had been no previous difficulty, met in a saloon, where they engaged in playing cards and drinking beer until they both became intoxicated and fell into a dispute on politics, which resulted in coarse and abusive language between them, and the prisoner became excited and angry, and, leaving the card table, said he would go home, and attempted to go out, when the deceased, much the stronger man, perpetrated repeated personal violence and indignity upon the prisoner (who several times attempted to go away), sufficient to inflame his passion, and provoke him to extreme anger; that the prisoner, thus provoked and greatly excited, escaping, at length, from the deceased, hastened to his own house, a short distance, and, not being absent from the saloon more than five minutes, returned with a revolver in his hand, with which he immediately shot and killed the deceased.

*Held*, that it was not clear that there was sufficient time between the provocation and the act for passion to cool and reason to resume control, or that the proof was evident or the presumption strong that the killing was malicious.

APPEAL from the Judge of the Floyd Common Pleas.

ELLIOTT, J.—Moore was arrested and committed to jail by a justice of the peace, on a charge of murder in the first degree, for the killing of one Sinex, and sued out a writ of *habeas corpus* for the purpose of being let to bail. After the service of the writ, and before the final hearing, Moore was indicted in the Floyd Circuit Court for the same offense. The question presented to the judge, on the return of the writ, was whether the proof was evident and the presumption strong that the prisoner was guilty of murder. The judge refused to admit the prisoner to bail, and dismissed the writ on the evidence, from which the prisoner appeals to this court.

The only question presented here is, whether the proof of the prisoner's guilt is so clear, or the presumption so strong, as to render the offense a non-bailable one.

The facts disclosed by the evidence are, substantially, as follows: The prisoner and the deceased were both residents of the city of New Albany, and were friends, no trouble or difficulty having previously existed between them. On the day of the difficulty, which resulted in the death of the

deceased, they met at a saloon in the city of New Albany, called the Belvidere, where they engaged in playing cards and drinking beer until they both became intoxicated. They differed in politics, and finally got into a dispute on that subject, and in reference to the battle of Pittsburgh Landing, which resulted in coarse and abusive language between them, and the prisoner became excited and angry. He left the card table, and said he would go home. The deceased insisted that he should not go, and asked him to drink with him, and settle the difficulty, which the prisoner refused to do, and started to go out. The deceased—who was much the stronger man—thereupon seized hold of the prisoner, when a scuffle ensued between them, the deceased forcing the prisoner into a chair, and insisting that he should not go until they had another drink. The prisoner again refused to drink with the deceased, and bid him to let him alone. He again started to leave, but the deceased caught him a second time, and in a very rough manner forced him back. The prisoner got away again from the deceased, and started to leave through the front room of the saloon, but was followed by the deceased, when the prisoner called on persons present to take notice that he demanded of the deceased to let him alone, and proceeded towards the front door, but the deceased followed him, and caught hold of him just as he had reached a screen that stood across the doorway, near the door. A scuffle ensued between them, when the prisoner, in attempting to jerk away from the deceased, partially fell and knocked down the screen, which lodged without falling entirely down, but leaving the prisoner under it. The deceased then caught him by the legs, and attempted to draw him back into the room, but he kicked loose, and as he was crawling out to the doorway the deceased kicked at him, but whether he hit him or not, the witnesses could not tell. The prisoner then left, much excited. Persons in the saloon who saw the difficulty, and knew the prisoner, and saw that he was intoxicated and excited, told the deceased that he would

return, and earnestly insisted that the deceased should leave the saloon, to avoid further difficulty; but he refused to do so, insisting that there was no danger that the prisoner would attempt to do him any harm. The prisoner lived but a short distance from the saloon. He walked hurriedly home, and very soon came out of the house with a revolver in his hand; he returned rapidly to the saloon (some of the witnesses testify that he ran), still holding the revolver in his hand, and as soon as he entered the saloon and saw the deceased, who was standing at the counter, he drew, and fired the shot which resulted in the death of the deceased. The evidence further shows that the period intervening, from the time the prisoner first left the saloon until his return, when he shot the deceased, did not exceed five minutes. It was also proved that intoxication had the effect on the prisoner to excite his passions, and greatly impair his reason. Soon after he left the saloon, after shooting the deceased, it was noticed that the side of the prisoner's face and neck were scratched and bleeding, and the marks on the neck resembled finger prints.

We held in *Ex parte Heffren*, 27 Ind. 87, that in this class of cases, it was proper that we should weigh the evidence, and determine the facts, as if trying the case originally.

To constitute the offense of murder, either in the first or second degree, malice is an essential ingredient. It is true, that where one person unlawfully and purposely kills another, malice, in the absence of rebutting evidence, is presumed from the act. But when no express malice is shown, and it appears that the act, though voluntary, was the result of a sudden heat, or transport of passion, upon a sufficient provocation, it rebuts the presumption of malice, and reduces the offense to manslaughter.

Here, it appears that no quarrel or difficulty existed between the prisoner and the deceased prior to their controversy in the saloon, just preceding the fatal act. The personal violence and indignity perpetrated by the deceased on the accused, and so often repeated, were certainly suffi-

Ex parte Moore.

cient to inflame his passion and provoke him to extreme anger; and such was the result; and if, in that transport of passion, thus provoked, the prisoner had immediately drawn a deadly weapon, and killed the deceased, it would hardly be claimed that the offense was murder. It would, at most, have amounted to manslaughter only. But the act did not immediately follow the provocation; and the question to be determined is, did sufficient time intervene between the provocation and the fatal act, under the circumstances of the case, for passion to subside and reason to interpose? The time necessary for cooling has never been defined or made absolute by rule; indeed, it could not, in justice, be so made. Each case must stand upon its own merits, as affected by its own particular circumstances. If two men fall out in the morning and fight in the afternoon, and one of them is slain, it is said to be murder, because in such a case there would seem to be ample time for the passions to cool, and reason to resume its sway. And so, in a given case, an hour has been deemed sufficient cooling time; see 2 Bishop's Crim. Law, § 641. It is said by the same author (§ 630) that "the crime of murder requires the mind to have acted from deliberation and intelligence; and, where it is clouded by passion, the killing is only manslaughter." This must be understood, however, with the qualification that the passion is the result of a sufficient provocation.

Applying these rules to the facts of the case under consideration, and in view of the provocation given by the deceased, the high state of excitement and passion produced upon the mind of the prisoner thereby, the hasty manner in which he went to his house and returned to the saloon with the pistol, and the short period of time, not exceeding five minutes, that intervened between the provocation and the act, and it seems to us that it cannot be fairly said that it is clear that there was sufficient time between the provocation and the act for the passion to cool and

reason to resume control, or that the proof is evident, or the presumption strong, that the killing was malicious.

We think, therefore, that the prisoner is entitled to be let to bail.

The judgment is reversed, and the cause remanded, with directions to the judge of the Court of Common Pleas to let the prisoner to bail in such sum as may be deemed proper to secure his presence to be tried on the indictment in the Circuit Court.

*J. S. Davis* and *D. C. Anthony*, for appellant.

*D. E. Williamson*, Attorney General, for the State.