Brown *et al. v.* The State.

## BROWN ET AL. *v.* THE STATE.

[No. 18,159.    Filed February 5, 1897.]

BAIL.—*Murder.*—*Presumption.*—*Burden of Proof.*—In an application to be let to bail under section 1785, Burns' R. S. 1894, the burden rests upon accused of showing in the lower court, and in this court, that the proof of guilt is not evident, and the presumption is not strong. *p. 29.*

SAME.—*Weight of Evidence.*—In an appeal from an application to be let to bail under section 1785, Burns' R. S. 1894, it is the duty of the Supreme Court to weigh the evidence and pass upon its conflicts as a trial court. *p. 29,*

MURDER.—*Indictment.*—*Presumption of Guilt.*—In an application to be let to bail by party under indictment for murder, the indictment returned by the grand jury stands with all presumptions in favor of its truth, until its force is broken by a showing that the grand jury acted upon insufficient evidence. *p. 30.*

SAME.—*Evidence.*—*Statements Made by Accused at Time of Murder.* —In an application for bail by persons indicted for murder, evidence of statements made by accused at the time of the killing that they were United States marshals in search of a criminal would not justify the presumption that the person killed had notice of such official character. *p. 32.*

SAME.—*Degree of Crime Not Changed by Killing Person Not Intended.*—Where the person killed was supposed to be another, if the act would have been murder had the person killed been as believed, the offense would not by reason of such mistake be reduced below the grade of murder, so as to entitle defendants to bail under section 1755, Burns' R. S. 1894, providing that murder is not bailable when the proof is evident or the presumption strong. *pp. 33, 34.*

BAIL.—*When Persons Indicted for Murder Are Not Entitled to.*—Persons indicted for murder are not entitled to bail where the facts show that they approached a house in the night time, claiming to be United States marshals in search of a criminal, and, after awakening the inmates thereof, shot a man coming out of the back door of the house with a gun in his hand, where there was no imminent peril of life shown. *p. 29-34.*

From the Washington Circuit Court. *Affirmed.*

*Jason B. Brown, John A. Zaring* and *M. B. Hottel,* for appellant.

*William A. Ketcham,* Attorney-General, and *Thomas M. Honan,* for State.

HACKNEY, J.—The appellants, John Brown, John Sexton and Robert Land, were charged by indictment in the lower court with murder in the first degree, in the shooting and killing, on December 29, 1896, of one John M. Rippey. On the 7th of January, 1897, they sought, jointly and severally, by motion, under section 1785, Burns' R. S. 1894, to be let to bail. Thereafter, and upon hearing the evidence of the appellee's witnesses, the circuit court denied said motion. From said ruling this appeal is prosecuted.

By the language of the Constitution, section 62, Burns' R. S. 1894, and of the statute, section 1755, Burns' R. S. 1894, murder is not "bailable when the proof is evident or the presumption strong." It is conceded by counsel for the appellants that in the lower court, and in this court the burden rests upon their clients of showing that the proof is not evident, or the presumption is not strong. *Ex parte Heffren,* 27 Ind. 87; *Ex parte Jones,* 55 Ind. 176; *Ex parte Kendall,* 100 Ind. 599; *Ex parte Richards,* 102 Ind. 260; *Schmidt* v. *Simmons, Sheriff,* 137 Ind. 93.

It is asserted in their behalf, and the proposition is conceded by the Attorney-General, that it is the duty of this court to weigh the evidence and pass upon its conflicts as a trial court. *Ex parte Heffren, supra; Ex parte Moore,* 30 Ind. 197; *Ex parte Sutherlin,* 56 Ind. 595; *Ex parte Walton,* 79 Ind. 600; *Ex parte Kendall, supra; Ex parte Richards, supra; Jones* v. *Darnall,* 103 Ind. 569, 53 Am. Rep. 545.

In view of the burden thus assumed it cannot be

true that we must indulge the presumption, in the absence of evidence warranting it, that the appellants were rightfully at the place of the conflict; that they acted in their proper self-defense; that the killing was unintentional or in the mistaken belief that the deceased was another, nor can we presume from the mere absence of evidence that any one of the elements of the charge is not subject to proof which is strong. If it were otherwise the case of the appellants would be made the stronger by the least searching inquiry into the State's evidence.

Consistent with the theory that the appellants assumed the *onus* of establishing that the proof was not evident and the presumption not strong, the indictment, returned by the properly constituted authority, the grand jury, stands with all presumptions in favor of its truth, until its force is broken by showing that the grand jury acted upon insufficient evidence. *Ex parte Jones, supra; Ex parte Kendall, supra; People* v. *Tinder,* 19 Cal. 539, 81 Am. Dec. 77. This showing may be made by fully disclosing the knowledge of the witnesses for the State.

The evidence heard by the lower court, and brought into the record for our consideration, was substantially that the appellants, on the evening of December 28, 1896, engaged, at the town of Salem, a conveyance with a driver to take them into the country; at 3 o'clock on the following morning they started for the residence of Richard Land, at which place they arrived very soon after 4 o'clock, and before it was yet light; while on the way they told the driver that they were after a man named Brooks, who had broken into a postoffice. When they arrived at the residence of Richard Land they stopped their conveyance in the highway, in front, and near the house; Robert Land, as directed, went into the house lot and called Richard,

to which call Mrs. Land responded, and was told to have Richard come out. Soon Richard came to the fence at the highway, some fifteen feet from the vehicle, and asked who they were and what they wanted, to which one of the appellants answered that they were a couple of United States marshals and were looking for a man, and asked him to come out to the vehicle that they might talk to him, and said they did not want to hurt him. He said he would get a light, and returned to the house, closed the door and turned down the light, and another inmate of the house locked the door. Richard then asked for his gun; his wife went into another room in search of it; John M. Rippey, who had occupied the bed with Richard, got up, when the gun was called for, and went out of the kitchen door, and to a smoke house located a few feet back of the dwelling. As Rippey went out of the back door the appellants and the driver heard the opening door; just then the driver remarked that "if the man is there he will go out the back door;" the men said, "that's right, come on." Immediately, Brown and Sexton, together, on one side of the house, and Robert Land and the driver on the other, started around to the rear of the house, Robert going in a field adjoining the house lot. When the driver reached the corner at the rear of the house, he saw, but could not recognize, Rippey, in his night clothes, in the smoke house door, "coming out or going in;" he had a shotgun in his hands, and raised it up; just then Brown and Sexton said, "Hands up," "halt," and "drop that;" Rippey said "I hain't, I haint," and immediately a shot followed, from a 38 caliber pistol, in the hands of Brown or Sexton, and took effect in the breast of Rippey, causing his instant death. As Rippey fell, Brown and Sexton caught him, and one of them said, "This ain't the right man;" a match was lighted, and one of them

said, "No, it ain't the right man, but we did well to get off this way." Appellants sent the driver, with the conveyance, to bring the sheriff and the coroner; after he had gone, Sexton took the gun, which, after the shot, was found lying inside the smoke house door, and appellants started back to Salem; when within one-half mile of the town they met the sheriff, to whom they gave the gun, and at the same time surrendered themselves.

In our opinion the evidence before us does not warrant the conclusion that Brown and Sexton were not trespassers, nor that at the time the shot was fired they, or either of them, were in imminent peril of life, or of great bodily injury, or that they might reasonably have believed themselves in such peril.

There is no sufficient evidence that they were officers, or that they possessed legal or colorable authority to apprehend Brooks, or to invade the premises of Richard Land. The statement to the driver that they were after Brooks, a supposed felon, and the statement to Richard Land, that they were United States marshals in search of a man, were not sufficient evidence to support an inference that they were such officers, or possessed legal authority to apprehend a felon, and especially were such statements insufficient to raise the inference that Rippey had notice of such official character or authority, or of their claim to such character. The evidence that Rippey raised the gun is by no means satisfactory, and has not sufficient strength, as it comes to us, to authorize the inference that it was so drawn as to menace the safety of either Brown or Sexton; whether the muzzle of the gun was raised to the sky, or to the level of their bodies, we do not know; whether his exclamations were so associated with the raising of the gun, and the manner in which it was raised, as to

indicate that Rippey sought peace or violence, we can not judge from the meager evidence before us.

There is, therefore, no occasion for the expression of an opinion as to the rights or duties of either Brown or Sexton, in the event that it should appear that they were not trespassers, or, if trespassers, and possessing reasonable grounds to fear immediate and pressing danger to life, or of great bodily injury, at the hands of Rippey.

It is a fair inference from the evidence that in firing the shot said appellants believed Rippey to be an other. It is, however, in the absence of any countervailing facts, a necessary presumption that the homicide was committed purposely. The deliberate and intentional use of a deadly weapon in a manner likely to produce, and actually resulting in death, enforces this presumption and carries with it the further presumption that the act was maliciously done. *Deilks* v. *State,* 141 Ind. 23; *Newport* v. *State,* 140 Ind. 299; *Walker* v. *State,* 136 Ind. 663; *Boyle* v. *State,* 105 Ind. 469; *McDermott* v. *State,* 89 Ind. 187; *Miller* v. *State,* 37 Ind. 432; *Murphy* v. *State,* 31 Ind. 511.

Such presumptions, it must be understood, are not conclusive; and that as to the existence of malice does not obtain where, under the facts, the homicide is justifiable, excusable, or committed under circumstances which characterize it as manslaughter, voluntary or involuntary. Whether such facts exist, as we have said, the evidence before us is too meager to disclose.

If the shooting of Rippey was in the mistaken belief that he was another, and if the act would have been murder had the person shot been as believed, the offense would not, by reason of such mistake, be reduced below the grade of murder. *Walker* v. *State,* 8

Ind. 290; Gillett on Crim. Law (2d ed.), p. 392, section 492; 1 Wharton Crim. Law, section 382. Of this proposition appellants' learned counsel frankly say: "We know that the rule of the common law is that a killing is murder, if the circumstances would have made it such in case the intended person had been slain, because, the common law transfers the previous felonious intent from the one to the other." It is claimed, however, that this proposition is not in favor in Indiana. This claim, we have no doubt, is erroneous.

Our conclusion upon the several propositions already stated must be that the appellants have not shown by the evidence offered that the proof is not evident, and the presumption not strong that the killing of Rippey constituted, at least, murder in the second degree, which is not bailable. *Ex parte Colter,* 35 Ind. 109.

It must not be understood, however, that this conclusion would find support if we were not required to indulge presumptions, in the first instance, favorable to the charge as made in the indictment, or if we were here considering the case upon the whole evidence. In the latter event, as must be observed upon the trial of the appellants, every reasonable presumption would be indulged in favor of their innocence, until such presumption should be removed by the evidence beyond a reasonable doubt.

Counsel for the appellants have not, in their briefs, sought to discriminate, and have not asked this court to distinguish between the appellants as to the degrees of their offending, and as to whether any one of them might be entitled to bail while others might not. We, therefore, regard such question as waived.

The judgment of the circuit court is affirmed.