

FILED

May 12 2015, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

James H. Voyles, Jr.
Jennifer M. Lukemeyer
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Satterfield,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 12, 2015

Court of Appeals Cause No.
49A02-1409-CR-659

Appeal from the Marion Superior
Court.

The Honorable Lisa Borges, Judge.

Cause No. 49G04-1404-MR-17426

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, James Satterfield (Satterfield), appeals the trial court's denial of his motion to let bail following his arrest and charge for murder.

We reverse and remand for further proceedings.

## ISSUES

Satterfield raises one issue on appeal, which we restate as follows: Whether the State established that the proof of Satterfield's guilt for murder is evident or the presumption of that guilt strong despite his claim of self-defense.

The State raises one issue on cross-appeal, which we restate as follows: Whether Satterfield filed a timely notice of appeal.

## FACTS AND PROCEDURAL HISTORY

On the morning of April 2, 2014, Satterfield met Maegan Biddle (Biddle) at the Bankers Lane Apartments located on the near east side of Indianapolis, Indiana. Biddle was a prostitute in the area and she and Satterfield had engaged in illicit sex for money a couple of times previously. Biddle and her friend, Andre Brown (Brown), had just returned from visiting Biddle's mother in Ohio, and she decided to prostitute herself that morning to raise money to buy crack cocaine.

Satterfield picked up Biddle along Washington Street and proceeded to the apartments where he parked under a carport. As usual, he locked the car's

doors prior to parking. Biddle began performing fellatio on Satterfield for thirty-five dollars. Shortly thereafter, Satterfield noticed a man, later identified as Brown, walking through the parking lot and towards the rear of his car. Noticing Brown approach his vehicle, Satterfield became nervous and retrieved his gun[1] from behind the passenger side seat. Despite the locked doors, Brown opened the passenger's side door and leaned down, saying "hey" in a forceful voice and holding a shiny object. (Transcript p. 45). Satterfield fired a single shot. As Brown fell backward, Biddle recognized him as her friend. Satterfield drove away quickly. After driving around for a couple of minutes, Satterfield paid Biddle and she left the car.

[7] Around 9:30 a.m. that morning, a maintenance man from the apartment complex found Brown's body. Detective Marcus Kennedy (Detective Kennedy) of the Indianapolis Police Department was notified. By the time Detective Kennedy arrived on the scene, Brown's body had been removed but a claw hammer was located in close proximity to where Brown's body was discovered. In a subsequent forensic investigation, the hammer tested positive for Brown's DNA. Brown's car was also found behind the carport, and inside the officers found some of Biddle's possessions. Within twenty-four hours of learning that Brown was dead, Satterfield arranged, through counsel, to turn himself in and to provide a voluntary statement. Satterfield has no criminal

---

[1] Satterfield is licensed to carry a gun.

history, has never before been arrested, and has been employed in lawn care irrigation since 1988.

[8] On April 7, 2014, the State filed an Information, charging Satterfield with murder, a felony, Ind. Code § 35-42-1-1. On July 18, 2014, Satterfield filed a motion to let bail, which the trial court considered during a hearing on August 15, 2014. During the bail hearing, witnesses testified and exhibits were admitted. At the close of the evidence, the trial court denied Satterfield bail. On August 29, 2014, Satterfield filed a motion to reconsider, which was again denied by the trial court.

[9] Satterfield now appeals and the State cross-appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10] Because the State presents us with a threshold procedural question, we will first address the merits of its cross-appeal.

## CROSS-APPEAL

[11] In its cross-appeal, the State maintains that Satterfield forfeited his right to appeal the trial court's denial of his bail by failing to file a notice of appeal within the requisite thirty days of the trial court's order. Because the trial court's order constituted a final appealable judgment and the motion to reconsider did not toll the running of time, the State maintains that the notice of appeal was due eight days prior to Satterfield's filing of his notice of appeal.

[12] A trial court's denial of bail is deemed a final judgment and appealable as of right. *Bradley v. State*, 649 N.E.2d 100, 106 (Ind. 1995), *reh'g denied*. In order to perfect an appeal, a notice of appeal must be filed within thirty days of the final judgment being appealed. Ind. Appellate Rule 9(A)(1). A motion to reconsider does not "extend the time for any further required or permitted action, motion, or proceedings[.]" Ind. Trial Rule 53.4(A). Accordingly, with the trial court's issuance of its order on August 15, 2014, Satterfield's notice of appeal was due on September 15, 2014, not on September 23, 2014.

[13] In an effort to avoid a forfeiture of his appeal, Satterfield contends that he labored under the mistaken impression that the trial court took the case under advisement at the conclusion of the bail hearing. "In this case, the trial court made an initial ruling but demonstrated some hesitancy in that it asked for guidance from other jurisdictions, which counsel then provided at a later date. The parties below were operating under the assumption that the initial order was not final until the trial court ha[d] a chance to consider the authority from other jurisdictions." (Appellant's Reply Br. pp. 1-2). After reviewing the transcript of the bail hearing, we find Satterfield's argument is, at best, disingenuous.

[14] While we agree with Satterfield insofar as the transcript reflects his counsel's request to undertake more research with respect to the applicability of justifiable defenses in a bail hearing, at the conclusion of the hearing, the trial court nevertheless reiterated that its "ruling is going to stand." (Tr. p. 76). Satterfield's counsel affirmed that she "understand[s] the ruling stands now."

(Tr. p. 76). Consequently, the trial court's denial of Satterfield's request for bail was a final, appealable order.

[15] However, *In the Matter of the Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014), our supreme court clarified that

> [t]he untimely filing of a Notice of Appeal is not a jurisdictional defect depriving the appellate courts of the ability to entertain an appeal. Instead, the timely filing of a Notice of Appeal is jurisdictional only in the sense that it is a Rule-required prerequisite to the initiation of an appeal in the [c]ourt of [a]ppeals. Timely filing relates neither to the merits of the controversy nor to the competence of the courts on appeal to resolve the controversy. . . . [T]he right to appeal having been forfeited, the question [then becomes] whether there are extraordinarily compelling reasons why this forfeited right should be restored.

In this case, we answer the question in the affirmative.

[16] The right to bail is "a traditional and cherished right." *Bozovichar v. State*, 103 N.E.2d 680, 681 (Ind. 1952), *abrogated on different grounds by Fry v. State*, 990 N.E.2d 429 (Ind. 2013). As such, "[t]he right to freedom by bail pending trial is an adjunct to that revered Anglo-Saxon aphorism which holds an accused to be innocent until his guilt is proven beyond a reasonable doubt." *Hobbs v. Lindsey*, 162 N.E.2d 85, 88 (Ind. 1959). "Unless [that right] is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951). Despite the broad language, the right to bail, as enshrined in the Indiana Constitution, is not unqualified as "[o]ffenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the

presumption strong." Ind. Const. art. I, § 17. Because of these strictly defined qualifiers in the case of murder or treason, each request for bail in those instances must be reviewed upon its individual merits. Thus, the denial of the right to award bail where the proof of guilt is not evident or the presumption of guilt is not strong would be a deprivation of liberty without due process of law, in violation of the Constitution, which would—rightly—call for prompt corrective action. *See Ex Parte McDaniel*, 97 So. 317, 318 (Fla. 1923). Ultimately, though, the criminal jurisprudence of Indiana and any corresponding discussion of bail is founded on a presumption of individual innocence. *See Bozovichar*, 103 N.E.2d at 681; *see U.S. v. Salerno,* 481 U.S. 739, 755 (1987) ("[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). It is the unique confluence of this fundamental liberty interest along with one of the most valued rights in our culture—the right to bail—that we conclude that Satterfield's otherwise forfeited appeal deserves a determination on its merits.

## APPEAL

### I. *The Fry Decision*

[17] The Indiana Constitution specifically provides that "[o]ffenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption strong." Ind. Const. art. I, § 17. "This qualification was proper because murder is 'the most serious charge that can be lodged by the [S]tate against an individual and

carries with it the possibility of the imposition of a sentence of death, society's hashest penalty,' and the purpose of bail would likely be disserved by an unqualified right in such a case." *Fry v. State*, 990 N.E.2d 429, 435 (Ind. 2013) (quoting *Phillips v. State*, 550 N.E.2d 1290, 1294-95 (Ind. 1990), *abrogated on different grounds by Fry v. State*, 990 N.E.2d 429 (Ind. 2013)). Until recently, the burden was placed on the defendant to show that either of those two separate and distinct circumstances exist—*i.e.*, to show that in his or her murder case the proof is not evident, or the presumption is not strong. *Fry*, 990 N.E.2d at 435.

[18] In *Fry*, our supreme court disregarded the well-established maxim of *stare decisis* and, in one fell swoop, overruled nearly 150 years of precedent going back to the Civil War era. Shifting the burden of proof, the *Fry* court held that "when a criminal defendant is charged with murder or treason, whether by indictment or information, the burden lies with the State to show that 'the proof is evident, or the presumption strong,' if it seeks to deny bail to that defendant." *Id*. at 443-44. Reversing the course of Indiana precedent, the court concluded that "the contrary procedure used in the past [is] incompatible with the fundamental guarantee presuming an accused's innocence until proven guilty beyond a reasonable doubt." *Id*. at 444.

[19] Recognizing this complete disapproval of *stare decisis*, the *Fry* court also set out "to articulate what is contemplated by the burden [this court] ha[s] now assigned to the State" and endeavored to "provide some guidance by placing this standard somewhere on the proof spectrum, which is bounded generally at the low end by 'reasonable suspicion' and at the high end by 'beyond a

reasonable doubt.'" *Id*. at 444, 445. "Like Goldilocks in the home of the three bears, [the *Fry* court] search[ed] for a formulation that is not too low, and not too high, but instead is just right." *Id*. at 446. After review of our sister states' jurisprudence in this area, our supreme court concluded that

> the State must show that the defendant "more likely than not" committed the crime of murder (or treason). Such a showing, at such an early stage of the process, seems sufficient to justify the denial of bail given the severity of the proposed offense and the attendant consequences. After all, at that point the trial court—while not pre-judging the ultimate guilt or innocence of the defendant—can reasonably say "the defendant most likely did it."

*Id*. at 448. As such,

> the State must [] present competent evidence either upon which those charging documents relied or upon which the State intends to rely at trial. Additionally the evidence cannot simply be statements by the prosecutor as to what the proof will—or might—be at trial. The magistrate must be shown information at the hearing from which he can make his own independent determination whether there is admissible evidence against an accused that adds up to strong or evident proof of guilt. . . . [T]he evidence presented by the State must show culpability of the actual capital crime for which bail may be wholly denied—i.e., murder or treason—and not simply implicate a lesser-included offense such as voluntary or involuntary manslaughter.

*Id*. at 449 (internal citations omitted).

[20] Although the *Fry* court shifted the burden of proof and clarified the standard of necessary evidence to establish an 'evident proof' or 'strong presumption' to deny bail for murder or treason, the court cautioned that its opinion "should not be construed to modify—either to enhance or diminish—the due process

protections we have always required at bail hearings." *Id*. at 449 (citing *Phillips*, 550 N.E.2d at 1295).

[21] In light of this reassessment of the burden of proof in bail hearings, we are called upon today to determine whether a defendant is allowed to present evidence of an affirmative defense to rebut the State's strong presumption that the defendant more likely than not committed the murder (or treason) accused of.

[22] While Satterfield answered this issue of first impression in the affirmative and suggests that we should impose on the trial court a requirement to assess a defendant's justifiable defenses during a bail proceeding, the State maintains that "[p]ossible defenses have no bearing on the bail issue." (State's Br. p. 13). "Requiring the State to negate a defense—such as the self-defense claim made here—could result in a bail hearing becoming a mini-trial that in some cases could consume countless hours of the trial court's time." (State's Br. p. 13). After hearing the parties' respective arguments, the trial court opined it was not allowed to "weigh potential defenses." (Tr. p. 74). We disagree.

[23] Although the text of Article I, § 17 shows that the framers of the Indiana Constitution wanted to establish a high threshold of proof before a person could be held without bail when charged with murder or treason, the words themselves do not suggest any limit on the kind of evidence that would be admissible in a proceeding to determine bail. Just like our supreme court in

*Fry*, we will turn to Indiana's Civil War precedents and their progeny to seek guidance as to the nature of evidence admissible in bail proceedings.

[24]   In *Ex Parte Moore*, 30 Ind. 197, 199-200 (Ind. 1868), the supreme court, faced with *habeas* proceedings in a murder case, considered it "proper" to "weigh the evidence, and determine the facts, as if trying the case originally" in answering the question "whether the proof of the prisoner's guilt is so clear, or the presumption so strong, as to render the offense a non-bailable one." Turning its analysis to the establishment of "express malice," the court noted that if the killing, "though voluntary, was the result of sudden heat, or transport of passion, upon a sufficient provocation, it rebuts the presumption of malice, and reduces the offense to manslaughter." *Id*. at 200. After considering the facts of the case, the *Moore* court concluded that

> in view of the provocation given by the deceased, the high state of excitement and passion produced upon the mind of the prisoner thereby, the hasty manner in which he went to his house and returned to the saloon with the pistol, and the short period of time, not exceeding five minutes, that intervened between the provocation and the act, [] it seems to us that it cannot be fairly said that it is clear that there was sufficient time between the provocation and the act for the passion to cool and reason to resume control, or that the proof is evident, or the presumption strong, that the killing was malicious.

*Id*. at 201-02. Finding the existence of provocation, the court held that "the prisoner is entitled to be let to bail." *Id*. at 202. *See also Schmidt v. Simmons*, 36 N.E.516, 516 (Ind. 1894) (defendant was refused bail after an indictment for murder even though "there were circumstances immediately preceding the fatal act . . . to incite hot blood" and a "conflict in the evidence as to whether the

deceased, at the time the fatal shot was fired, was making an effort to assault the appellant"),*abrogated on different grounds by Fry v. State*, 990 N.E.2d 429 (Ind. 2013); *Brown et al. v. State*, 46 N.E. 34, 36 (Ind. 1897) ("It is, however, in the absence of any countervailing facts, a necessary presumption that the homicide was committed purposely."), *abrogated on different grounds by Fry v. State*, 990 N.E.2d 429 (Ind. 2013).

[25] Several years later, the supreme court issued its ruling in *State v. Hedges*, 98 N.E. 417 (Ind. 1912), *abrogated on different grounds by Fry v. State*, 990 N.E.2d 429 (Ind. 2013), in which it granted an application for bail after a murder indictment. In *Hedges*, the court was presented with an objection by the State that the applicant of the bail hearing "can only introduce the evidence of witnesses upon whose evidence the State [had] relied for conviction" before the grand jury. *Id*. at 417. Considering whether only the evidence that was presented before the grand jury can be presented during a bail hearing, the court unambiguously declared:

> The rule is that the applicant must introduce the evidence of witnesses indicated by the indictment, and he must also introduce such witnesses as the [S]tate indicates that it does rely upon, or claim it relies upon, but [the State] cannot foreclose the inquiry by simply declaring as to any witness that it does not rely upon his testimony.
>
> The inquiry necessarily requires the court to travel over much of the ground to be heard by a traverse jury, in so far as the degree of the offense is concerned, but it is an acknowledged constitutional and statutory right of very ancient usage on proper showing.
>
> If it is to be of any consequence or avail, it must overcome the *prima facie* case made by the indictment, but it will readily be seen that that might be an impossibility, and, presumptively, if only the witnesses

> upon whom the [S]tate relies are offered, and might be a barren right, and subject persons to cruel and unusual hardship, if not punishment, if there be not a full and fair inquiry from these who really have information.

*Id*. at 418 (internal citations omitted). *See also State ex. rel. Post-Tribune Pub. Co. v. Porter Superior Court*, 412 N.E.2d 748, 418-19 (Ind. 1980) (where our supreme court acknowledges that a bail hearing amounts to a mini-trial, and includes the presentation of evidence that may or may not be admissible at the later trial).

[26] Continuing on the path of allowing the presentation of incriminating and exculpatory evidence during bail proceedings, our supreme court reaffirmed in *Phillips* that the appellant in a bail hearing must be afforded all constitutional protections guaranteed to the criminally accused: the right to counsel, the right to present witnesses in his defense and to confront and cross-examine those against him, and the right against self-incrimination. *Phillips*, 550 N.E.2d at 1295. And most recently, in *Shuai v. State*, 966 N.E.2d 619, 623-24 (Ind. Ct. App. 2012), *trans. denied*, we reversed the trial court's denial of bail in a murder charge, where Shuai offered evidence to support alternate explanations that led to the minor victim's death and called into question the credibility of the autopsy report. Relying on the evidence presented by both parties, we concluded—in a premonition of shifting burdens in *Fry*—that Shuai "presented sufficient evidence to rebut the presumption" that the proof of guilt is evident and the presumption of guilt is strong. *Id*. at 625.

[27] Based on a long and consistent history of Indiana precedents, we do not find that the State's argument prevails. Permeated within the right to bail is the

presumption of innocence for all purposes while awaiting trial. *See Fry*, 990 N.E.2d at 440, 441. Although the right to bail is not absolute, but rather severely qualified by our Constitution in the case of murder (or treason), the "'proof' and 'presumption' that Article I, § 17 refers to are the 'proof' and 'presumption' of *guilt*." *Id*. at 421. Even though the *Fry* court shifted the burden of proof in bail proceedings to the State, the nature of the evidence establishing that the proof is evident or the presumption strong that the defendant committed murder (or treason) remained untouched. The *Fry* court admonished that "our opinion today should not be construed to modify—either to enhance or to diminish—the due process protections we have always required at bail hearings." *Id.* at 449. Considering all of our precedent, it appears that in its argument on appeal the State attempts to use *Fry* to diminish the due process protections that we have historically required.

[28] In order to preserve the presumption of innocence and to fully retain the constitutional due process rights, a defendant must be awarded the opportunity to present evidence and witnesses on his or her behalf in an endeavor to rebut the State's burden that he or she "more likely than not committed the crime of murder (or treason)." *See id*. at 448; *see also Phillips*, 550 N.E.2d at 1295 (a defendant must be afforded the type of procedural due process hearing that will guarantee that bail is not denied unreasonably or arbitrarily). If a defendant would be prevented from presenting evidence indicating a possible justification to the murder charge, then no bail would be possible as the constitutional qualification on the presumptive right to bail would become absolute. The right

to bail when charged with murder or treason would then indeed become a "barren right." *Hedges*, 98 N.E. at 418. Accordingly, after the *Fry* decision re-evaluated the bailment landscape, we pay homage to the ancient principle of *stare decisis* and reaffirm a defendant's right to present exculpatory evidence as to his or her culpability during a bail proceeding and the trial court's duty to take this evidence into account when considering a request for bail.

## II. *Application to the Facts*

[29]    When reviewing a trial court's denial of bail in a murder case, we reverse only for an abuse of discretion. *Rohr v. State*, 917 N.E.2d 1277, 1280 (Ind. Ct. App. 2009). A decision is an abuse of discretion when it "is clearly against the logic and effect of the facts and circumstances." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). We will not reweigh the evidence, and we consider any conflicting evidence in favor of the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*.

[30]    Here, Satterfield was charged with knowingly killing Brown. Despite Satterfield's admission that he shot Brown, he presented evidence that he might have used this deadly force in self-defense. The evidence reflects that while Satterfield was in his own vehicle, Brown forcefully attempted to enter the car while holding a shiny object. Satterfield fired a single shot.

[31]    However, after being presented with Satterfield's evidence, the trial court refused to weigh any evidentiary facts alluding to a possible self-defense and, thus, abused its discretion. Accordingly, we reverse the trial court's denial of

Satterfield's bail and remand to the trial court with instructions to conduct a new bail hearing in accordance with our opinion today.

## CONCLUSION

[32] Based on the foregoing, we hold that even though Satterfield forfeited his right to appeal due to his failure to timely file a notice of appeal, extraordinarily compelling reasons warrant a review of Satterfield's argument on the merits. Upon review of the evidence, we reverse the trial court's denial of bail and remand for a new bail hearing with instructions to weigh Satterfield's evidence of self-defense.

[33] Reversed and remanded.

[34] May, J. concurs

Bradford, J. concurs in result